THE STATE v. NOLAND, *Appellant.*

Division Two, September 20, 1892.

1. **Criminal Law**: STATE  TREASURER:  EMBEZZLEMENT:  STATUTE. Section 3555, Revised Statutes, 1889, providing for the indictment of any officer appointed or elected by virtue of the constitution of the state or any law thereof, who may be guilty of embezzlement, is not repealed by the provisions of sections 8624–5 and others of the special treasury law.

The State v. Noland.

111   473
159   140
159   167
159   260
111   473
162   234

111   473
169  13663
169  14664

111   473
173   6690
95a11134

2. ———: ———: ———: ———. A state treasurer is properly indictable under said section 3555 for the embezzlement of public moneys.

3. ———: ———: ———: INDICTMENT. In such indictment it is necessary only to charge the official character of the defendant, his receipt of the money by virtue of his office, and his fraudulent and felonious conversion of it to his own use.

4. ———: ———: ———: ———. Nor is it necessary, under section 4111, Revised Statutes, 1889, to charge in the indictment that the money embezzled "was lawful money of the United States."

5. ———: ———: ———: ———. An indictment charging that the defendant, as state treasurer, "did unlawfully, fraudulently and feloniously convert to his own use" certain public moneys, and setting out the different sums, is sufficient under section 3555, without expressly charging a criminal intent.

6. Criminal Practice: CHANGE OF VENUE. It is competent for the trial court before entering an order changing the venue to permit the defendant to withdraw his application.

7. ———: JUDGE OF ANOTHER CIRCUIT: TRIAL. The fact, that a judge, who has been called to try a criminal case in which the regular judge is disqualified by the defendant's oath of prejudice, states that he will not be able to be present until a date later than that to which the cause has been adjourned, does not require the calling of another judge, but the judge first selected is authorized to try the case.

8. ———: STATE TREASURER: EMBEZZLEMENT, EVIDENCE OF. On the trial of defendant for embezzling, as state treasurer, public moneys, the evidence showed that he was a defaulter in the sum of $32,745.46, which was supplemented by proof of his confessions, and by evidence of his having drawn a draft for $1,150 on a bank and charging the same against himself for only $1.50, and, also, by evidence of his having drawn another draft for $589 in favor of a third person, and failing to charge himself with it. *Held,* the evidence was sufficient to authorize a conviction.

9. ———: ———: ———. Nor was the draft for $589 inadmissible in evidence because defendant had omitted to attach to it his official seal.

10. ———: ———: ———: SETTLEMENT OF DEFICIT. The fact that the defendant had settled his deficit did not destroy the criminality of the act, and it was not admissible on the trial for the embezzlement.

11. ———: MOTION FOR NEW TRIAL: GENERAL OBJECTION TO EVIDENCE. Specific objections taken to testimony at the time it is offered need not be repeated in the motion for a new trial, but the objections may be there assigned in a general form.

12. **Criminal Practice**: STATE TREASURER: EMBEZZLEMENT: EVIDENCE. A state treasurer who is being tried for embezzlement of public money cannot show that he has in bank a certain fund which has not been deducted from his account where the fund was not subject to his control, having been drawn from the treasury for a specific purpose, and there is no claim by the state that the embezzlement extended to that fund.·

13. ——: ——: ——: INSTRUCTION: CRIMINAL INTENT. An instruction that, if defendant had unlawfully, fraudulently and feloniously converted to his own use money he had collected by virtue of his official position, he was guilty of embezzlement, is not erroneous in ignoring the criminality of the intent. (*State v. Manley*, 107 Mo. 364, *followed.*)

14. ——: ——: ——: ——: ——. The intent may be inferred from the unlawful conversion.

15. ——: ——: ——: SEVERAL COUNTS: VERDICT. The jury is not required to specify in their verdict, on an indictment for embezzlement, containing several counts, established by the same evidence, the count upon which they find the defendant guilty. (*State v. Harmon*, 106 Mo. 635, *distinguished.*)

16. ——: MOTION FOR NEW TRIAL: AFFIDAVITS. The trial court did not err in refusing to strike from the files certain affidavits filed in opposition to the motion for a new trial, because the notary public who administered the oaths was also the prosecuting attorney in the case.

17. ——: MISCONDUCT OF JURORS. It is peculiarly the province of the trial court to try the question of the misconduct of the jurors and the sheriff.

*Appeal from Cole Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

*Charles T. Noland, W. S. Pope* and *Charles P. Johnson* for appellant.

The indictment should have been quashed: *First.* Because it was drawn under section 3555, Revised Statutes, 1889, when it should have been drawn under the special treasury law. Revised Statutes, 1889, ch. 164. The special law repealed the general law in regard

to embezzlement by public officers, in so far as it applied to the state treasury. *State v. Green,* 87 Mo. 585; *State v. Bittinger,* 55 Mo. 596; *State v. Debar,* 58 Mo. 395; *State v. Clark,* 54 Mo. 17; *State v. Newton,* 26 Ohio St. 265; *State v. Wells,* 112 Ind. 237; *State v. Mason,* 108 Ind. 48; *State v. Denton,* 22 Mo. App. 305; *Wood v. State,* 47 Ark. 488; 1 Bishop on Criminal Procedure [2 Ed.] sec. 598; 1 Wharton on Criminal Law, sec. 371. *Second.* Because it alleged that defendant was state treasurer and failed to allege that he had ceased to be. There could be no embezzlement until he ceased to be treasurer and failed to pay over to his successor the money due the state. Until there was some one authorized to receive it for the state, there could be no unlawful withholding or depriving the state of it. Revised Statutes, 1889, secs. 8613, 8628, 8633, 8635; *State v. Rubey,* 77 Mo. 610; *State v. Hebel,* 72 Ind. 361; *Com. v. Lewis,* 12 S. W. Rep. 266; *Brandt v. State,* 41 Iowa, 593; *Vance v. State,* 35 Ark. 176; *Chaplin v. Lee,* 25 N. W. Rep. 609. *Third.* Because it should have described the money as "lawful money of the United States." If it was lawful money of the United States, no further description was necessary. *State v. Carro,* 26 La. Ann. 377. It need not have described the denomination of the bills, nor whether it was legal tender or national bank notes or coin, for section 4111 covers that. But there must be some allegation that the money was lawful money of the United States in order for section 4111 to apply; for, with the exception named in this section, all money must be specifically described under the common law and the repeated decisions of this and other states. *Reside v. State,* 10 Tex. App. 675; *People v. Cohn,* 8 Cal. 42; *State v. Kroeger,* 47 Mo. 530; *State v. Moore,* 66 Mo. 372 (overruling *State v. Kroeger, supra,* in part, but not in the point here raised); 2 Bishop on Criminal

Procedure, sec. 703; *State v. Denton*, 22 Atl. Rep. 305; *Stewart v. State*, 62 Md. 413; *Kearney v. State*, 48 Md. 23; *Ridgeway v. State*, 41 Tex. 231; *Merwin v. People*, 26 Mich. 298; *Smith v. State*, 33 Ind. 159; Wharton on Criminal Pleading & Practice, sec. 218, notes in 51 Am. Dec. 232, 233, 234, 235. *Fourth.* Because it failed to allege the intent with which defendant converted the money to his own use. An evil intent is a necessary element of the crime of embezzlement. *State v. Reilley*, 4 Mo. App. 392; *State v. Pratt*, 98 Mo. 482; *State v. Jennings*, 98 Mo. 495; *State v. Simpson*, 73 N. C. 269. *Fifth.* The first clause, section 3555, Revised Statutes, 1889, "converting to his own use," describes the elements of an ordinary embezzlement. *State v. Flint*, 62 Mo. 393; *State v. Clarkson*, 59 Mo. 149. *Sixth.* "In statutory offenses there must be an evil intent, though the statute is silent on the subject." 1 Bishop on Criminal Law [7 Ed.] sec. 345; Bishop on Statutory Crimes [2 Ed.] secs. 132, 432*a;* 1 Bishop on Criminal Procedure, sec. 538, and citations, and secs. 623–630, and notes; *Gabe v. State*, 1 Eng. 519. *Seventh.* An indictment must not only follow the words of the statute, but it must follow the construction of the statute, and every element of the offense which a construction shows to be necessary to constitute the offense must be alleged with sufficient clearness to apprise a defendant of the nature and cause of the accusation against him. 1 Bishop on Criminal Procedure, secs. 626–628; *State v. Hebel*, 72 Ind. 361. *Eighth.* It will not do to simply follow the exact words of a statute in all cases in drawing indictments. Where a statute uses the word "wilful," the indictment must charge the acts to have been done "knowingly" and "corruptly." *State v. Pinger*, 57 Mo. 242; *State v. Hein*, 50 Mo. 362; *State v. Gardner*, 2 Mo. 23. The word "embezzle" has a well-known legal meaning.

The legislature used it in that sense. And the words "so embezzle," at the end of section 3555, refer to the description of the offense in the lines above, and show that the offense of "converting to his own use" is embezzlement. The wording of section 3549, "embezzlement by an agent or servant," is the same in its concluding lines. The cases of *State v. Reilley*, *State v. Pratt, supra*, together with a host of authorities cited herein, establish the law to be that an intent to deprive the owner of his property is a necessary and essential element of the offense of embezzlement, and should be charged in the indictment. *Ridgeway v. State*, 41 Tex. 231; *State v. McCollum*, 44 Mo. 343; 4 American & English Encyclopedia of Law, 746; *Huntsman v. State*, 12 Tex. App. 619; dissenting opinion of Judge THOMAS in *State v. Harmon*, 18 S. W. Rep. 134; *People v. Hurst*, 62 Mich. 276; *Guest v. State*, 24 Tex. App. 235; *State v. Schermer*, 55 Mo. 83. (2) When the court sustained defendant's application for a change of venue, it had no power to permit defendant to withdraw said application until it first set aside its own judgment that the defendant could not have a fair trial on account of the prejudice against defendant in the minds of the inhabitants of Cole county. Until that judgment was set aside, the court had divested itself of all jurisdiction except to name the county to which the cause would be sent for trial. *State v. Gleason*, 88 Mo. 582; *State v. Schaffer*, 36 Mo. App. 91; *In Matter of Est. of Whitson*, 89 Mo. 58; *State v. Shaw*, 43 Ohio St. 324; *State v. Daniels*, 66 Mo. 207; *State v. Gabriel*, 88 Mo. 631; *State v. Thomas*, 32 Mo. App. 159; *State v. Shipman*, 93 Mo. 157; *Goodhue v. People*, 94 Ill. 47. The case should be reversed and remanded, and the change of venue be completed by sending the cause to another county, or the order sustaining the application set aside. The withdrawal of the application by defendant on the

illegal grant of permission for him to do so by the court does not restore jurisdiction to the Cole county circuit court. *State v. Hayes*, 88 Mo. 344. The question of jurisdiction is always open. *State v. Lawrence*, 45 Mo. 492. (3) When Judge EDWARDS, on January 7, sustained the affidavit of prejudice of himself against defendant, it was his duty to order an election by the bar, or to reset the cause and call in some other circuit judge to try the case. He set the cause for trial on April 20, and notified Judge BURGESS, and Judge BURGESS accepted. This ended Judge EDWARDS' jurisdiction, except upon the contingency of Judge BURGESS not appearing; then it would be his duty to again reset the cause, and call in some other circuit judge. On April 20, Judge BURGESS did not appear, and Judge EDWARDS adjourned court until May 4. Judge BURGESS was not again called on by Judge EDWARDS, nor was the case reset. Therefore, the cause became continued to the next term by operation of law, and Judge BURGESS had no jurisdiction to try the case on May 4, nor in July, and all proceedings had before him were *coram non judice*. *Stoval v. Emerson*, 20 Mo. App. 322; *Lacy v. Barrett*, 75 Mo. 469; *State v. Shea*, 95 Mo. 85; *State v. Shaeffer*, 36 Mo. App. 590. (4) The demurrer to the evidence should have been sustained. There was no proof as to the use of the money by defendant. The language of the statute is "convert to his own use;" it does not attempt to punish a simple conversion. (5) It was competent to show a settlement had been made and all the money due was in the treasury. The report of the legislative committee should have been admitted in evidence. *State ex rel. v. Hixon*, 41 Mo. 210; *State v. Leonard*, 6 Cald. 307; Revised Statutes, 1889, secs. 8635-7. (6) The "Wilson" check ought not to have been admitted in evidence. It had no seal of the treasurer's office on it as required by the statute. (7)

The court erred in giving instructions for the state. They wholly omit the element of *"animus furandi."* The jury should have been specifically charged on the question of defendant's real intent. *State v. Flint*, 62 Mo. 393; *State v. Clarkson*, 59 Mo. 149; *People v. Hurst*, 62 Mich. 276; Sackett's Instructions to Juries, 555; *Stallings v. State*, 15 S. W. Rep. 716; *State v. Meyer*, 23 Weekly Law Bul. 251; *People v. Converse*, 74 Mich. 478; *State v. Ware*, 62 Mo. 597; *State v. Schermer*, 55 Mo. 83. (8) The verdict is insufficient to sustain the conviction because the indictment contains three counts, and it is a general one. *State v. Harmon*, 18 S. W. Rep. 134; 2 Bishop on Criminal Procedure [3 Ed.] sec. 595; Wharton on Criminal Pleading & Practice [8 Ed.] sec. 752; 2 Thompson on Trials, sec. 2640; *Com. v. Carey*, 103 Mass. 214; *State v. Johnson*, 75 N. C. 123. A general verdict is good where there are several counts describing the same transaction, so as to meet the proof at the trial, if any one of the counts is sufficient to sustain a judgment. *State v. Pitts*, 58 Mo. 556. (9) The court erred in refusing instructions asked by defendant. There is nothing in the evidence to show the offense was committed in Cole county. *State v. Schaeffer*, 89 Mo. 271; *State v. Hatch*, 91 Mo. 568. (10) The trial court erred in refusing to strike out the affidavits in opposition to a new trial taken before W. S. Davison, the prosecuting attorney. *Collins v. Stewart*, 16 Neb. 52; 1 Tidd's Practice, 494; *Wilhouke v. Halle*, 37 Ga. 678; *Den v. Geiger*, 9 N. J. L. Rep. 225; *Dale v. Moore*, 51 Mo. 589; *Stevens v. Miller*, 46 Mo. 404; *Smith v. Ponath*, 17 Mo. App. 262; *Williams v. Rawlins*, 33 Ga. 121; *Hammond v. Freeman*, 9 Ark. 62; *Taylor v. Hatch*, 12 Johns. 340; *Warner v. Warner*, 11 Kan. 121; Nash on Pleading & Practice [4 Ed.] 274. (11) The court

The State v. Noland.

erred in refusing to grant a new trial because of the prejudice of the jurors.

*John M. Wood,* Attorney General, *W. S. Davison,* Prosecuting Attorney, and *J. R. Edwards,* Assistant Prosecuting Attorney, for Cole County, for the State.

(1) The indictment is sufficient, and the demurrer thereto was properly overruled. Revised Statutes, sec. 3555; *State v. Clarkson,* 59 Mo. 149; *State v. Flint,* 62 Mo. 393; *State v. Hays,* 78 Mo. 600; Kelley on Criminal Law, secs. 315–343; Revised Statutes, sec. 4111; *State v. Pratt,* 98 Mo. 482; *State v. Jennings,* 98 Mo. 493. The provisions of chapter 164, Revised Statutes, are not inconsistent with section 3555, Revised Statutes, and clearly do not repeal said section. Upon the questions last presented, see *Hemingway v. State,* 8 S. Rep. 316. (2) The verdict is supported by the overwhelming proof of defendant's guilt introduced on the part of the state. The testimony of the committee of experts, to the effect that defendant had embezzled the sum of $32,745.69, was corroborated by many other witnesses and by the defendant's own confessions, and was not negatived in a single particular. (3) Proof of the delivery to defendant of the certificate of settlement made by the committee, introduced by the state, was competent. Revised Statutes, 1889, sec. 8637. The other objections made to the evidence introduced by the state are too trivial to deserve consideration. (4) The evidence offered by the defendant and excluded by the court, as to the amount on deposit in the Bank of Commerce of New York, to the credit of the bond redemption account, was incompetent, for the reason that said fund was not charged to the state treasurer nor subject to his check, nor wa. he responsible for its

safe-keeping.    Revised Statutes, 1889, sec. 8658.    (5)
The court did not err in excluding the evidence offered by
defendant to show that his bondsmen had repaid to the
state the amount which had been embezzled by him.
*State v. Pratt*, 98 Mo. 482.    (6) The instructions given
by the court properly declare the law.    *State v. Findley*,
101 Mo. 217; *State v. Pratt* and *State v. Jennings, supra;*
*State v. Heath*, 70 Mo. 565.    (7) The court did not err
in refusing instructions asked by defendant.    (8) An
examination of the affidavits filed as to the competency
and conduct of the jurors will show that those in
support of the motion were contradicted by counter-
affidavits filed on the part of the prosecution, and
shows that the objections are not supported by the
record.    The trial court found that the charges against
the jurors were not sustained, and this finding being
supported by the evidence, which it was the duty of
the trial judge to weigh and consider, it will not be
disturbed by the appellate court.    *State v. Gonce*, 87
Mo. 627; *State v. Cook*, 84 Mo. 40; *Morgan v. Ross*, 74
Mo. 318.    (9) The verdict is in proper and legal form.
*People v. McKinney*, 10 Mich. 54.    This case is dis-
tinguishable from *State v. Harmon*, relied on by appel-
lant.    In the latter case the different offenses were
distinct and disconnected, and the proof of one did not
involve the proof of the other.    According to the
weight of authority where the offenses are of the same
character and are between the same parties, and will
admit of the same legal judgment or punishment, not
only that such joinder may be made, in the discretion
of the court, but that under such circumstances a
general verdict of guilty will be upheld.    *Cash v. State*,
10 Hump. 111; *People v. Rynders*, 12 Wend. 425;
1 Chitty on Criminal Law, 253; *Com. v. Cain*, 102
Mass. 487; *Josslyn v. Com.*, 6 Metc. 236; *Booth v.
Com.*, 5 Metc. 535; *Com. v. Butterick*, 100 Mass. 1;

*Com. v. Holmes,* 137 Mass. 248; *State v. Smith,* 18 S. C. 149; *Dohme v. State,* 68 Ga. 339; *Hawker v. People,* 75 N. Y. 487; *Nelson v. State,* 52 Wis. 534; *State v. Williams,* 9 Ired. 140; *Ex parte Hibbs,* 26 Fed. Rep. 421; *State v. Tuller,* 34 Conn. 298; *Wilson v. State,* 20 Ohio Rep. 26; *Guthrie v. People,* 24 N. E. Rep. 100; *State v. Billingshood,* 51 Me. 363.

GANTT, P. J.—At the general election held in November, 1888, the defendant was duly elected state treasurer of Missouri. He gave bond, qualified as required by law and entered upon the discharge of his duties January 14, 1889.

At the May term, 1890, of the circuit court of Cole county, the defendant was indicted for embezzling the public moneys while acting in the capacity of state treasurer. The indictment is in three counts, and is drawn under section 3555 of the Revised Statutes of 1889. All three of the counts charge an embezzlement of these public moneys: The *first,* the sum of $1,150, January 28, 1890; the *second,* the sum of $589, on the seventeenth of February, 1890; and the *third,* $26,813.24, on the twenty-seventh of February, 1890.

At the same term the defendant filed his motion to quash, assigning various reasons why the indictment was insufficient in law. The first objection to the indictment goes to the whole paper. It is urged that the defendant, as state treasurer, was not subject to indictment under section 3555, but, if guilty at all, could only be prosecuted under chapter 164, Revised Statutes, 1889, prescribing the duties of the treasurer, and affixing certain penalties for a violation of his duties as such in certain contingencies.

The section 3555 is, in itself, broad and comprehensive enough to cover an embezzlement by the state treasurer, for, by its terms, it applies to "any officer

appointed or elected by virtue of the constitution of this state, or any law thereof," but the contention is, that the general law was repealed by the special treasury law, as contained in chapter 164, Revised Statutes, 1889. To effect this repeal by implication, it must appear that the provisions of chapter 164 are repugnant to, or are clearly inconsistent with, said section, and intended by the legislature to furnish a different punishment for the state treasurer from that specified in said section. *Manker v. Faulhaber*, 94 Mo. 430; Sedgwick on Statutory & Constitutional Law [2 Ed.] 97–107.

The sections of chapter 164 that are thought to be inconsistent with section 3555 are sections 8624, 8625, 8672 and 8674. An examination of these will show that section 8624 applies only to the failure to pay a warrant lawfully drawn upon the treasury when there is money in the treasury to pay the same, and clearly has no bearing upon the facts of this case.

Section 8625 applies to certain specified malfeasances in office, such as extortion or oppression in office, the receiving of fees not allowed by law, or receiving rewards for legal duty not allowed by law, and the violation is a misdemeanor. Nothing of this kind is charged or proven in this case, and, consequently, this section likewise is wholly foreign to the matter in hand.

Section 8672 makes it a felony for the state treasurer to make a profit out of the moneys in the treasury by loaning or depositing otherwise than required by the statute. Now there was no evidence that the defendant in this case made any profit out of any moneys in the state treasury belonging to the state by loaning, depositing or otherwise using or disposing of the same; nor was there any evidence of the removal by the defendant, or by his consent, of such moneys

or any part thereof, or any bonds deposited therein, "*out of the vaults of the treasury department in the state capitol.*"

Section 8674 is equally inapplicable. By its terms it applies only to a˙wilful failure or refusal to perform some act required by chapter 164. It is clearly not inconsistent with section 3555, and does not repeal said section.

Under the evidence in this case, the defendant was guiltless of any offense under either of said sections, and yet the jury, by their verdict, have said he was guilty of an offense not denounced in either of said sections, to-wit, the felonious conversion and embezzlement of the public moneys committed to his hands by virtue of his office of state treasurer. It is perfectly consistent to say he is guilty of the latter and innocent of all the others, or he might have done all the others and not been guilty of embezzlement within the meaning of section 3555. There is no repugnancy in the said several sections, and chapter 164 presents no obstacle to the indictment of a state treasurer under section 3555, and the motion to quash on this ground was properly overruled.

Again, it is said the indictment is bad because it does not show upon its face that the defendant had ceased to be state treasurer; in other words, that he could not be guilty of embezzlement until he had ceased to be treasurer, and failed to pay over to his successor the money due the state. Prosecutions under various statutes for failure to pay over have no application to a case like this. *State v. Porter*, 26 Mo. 201.

To constitute embezzlement under this indictment, it was necessary to charge the official character of the defendant, his receipt of the moneys by virtue of his office as treasurer and his fraudulent and felonious

conversion thereof to his own use. This the indict-
ment does. His failure to pay over to his successor is
evidence of embezzlement, but it is the fraudulent con-
version of the money in his hands that constitutes his
crime. This point must likewise be ruled against the
defendant.

Nor is there anything in the objection that the
indictment does not charge that the money embezzled
was "lawful money of the United States." Our stat-
ute, section 4111, Revised Statutes, 1889, expressly
dispenses with the necessity of any such averment.
*State v. Pratt,* 98 Mo. 482.

It is next objected that the indictment is insuffi-
cient for failure to aver the intent with which the
defendant converted the money to his own use. The
indictment in each of the several counts charges that
the public moneys belonging to the state of Missouri
by him received, and taken into his possession and
custody, by virtue of his said office, for safe-keeping,
transfer and disbursement, at the county and state
aforesaid, and on the days named, "did *unlawfully,
fraudulently and feloniously convert to his own use, and
embezzle,*" closing with the usual conclusion, as in
grand larceny.

Section 3555 does not in specific words make the
criminal intent an element in the offense further than
is necessarily included in the words, "convert to his
own use," or "shall make way with or secrete," and it
has generally been ruled under similar statutes that an
indictment substantially charging the crime in the
terms of the statute is sufficient. *Ker v. People,* 110
Ill. 629; *People v. Tomlinson,* 66 Cal. 344; *Golden v.
State,* 22 Tex. App. 1; *Commonwealth v. Bennett,* 118
Mass. 443.

But in this case the pleader charged the conver-
sion to have been *unlawful, wilful, fraudulent and*

*felonious.* These words must be held to be tantamount to, and synonymous with, the words, "with intent to defraud," and to meet every requirement of the allegation of criminal intent, if it was necessary to charge the intent, in addition to the other averments, but we do not think it is.

Section 3555 is the result of the legislation in this state to prevent the misappropriation and fraudulent conversion by public officers, trustees and other fiduciaries, of the moneys intrusted to their care. As the evil increased, the statute has kept pace with it. It is useless to go to the English cases for precedents. The purpose of the statute is clear, ___d it is entirely within the power of the legislature to define as criminal an act so clearly dishonest in itself. As was said in *State v. Pratt*, 98 Mo.: "The section is *penal* it is true, but it is also *remedial* in that it was designed to catch a class of criminals, who before its enactment slipped through the meshes of the law, and its force should not be frittered away by niceties and refinements at war with the practical administration of justice." The indictment fully met all the constitutional and statutory requirements. 2 Bishop on Criminal Procedure, 328; *People v. Garcia*, 25 Cal. 531; *Alderman v. State*, 57 Ga. 367; *United States v. Patterson*, 6 McLean, 466; *Hemingway v. State*, 8 S. Rep. (Miss.) 317. It follows that the motion to quash was properly overruled.

II. At the same term at which the indictment was returned, the defendant made his application for a change of venue on account of the prejudice of the inhabitants of Cole, Cooper, Moniteau and Morgan counties. This application was heard by Judge EDWARDS, and was sustained as to Cole county and overruled as to the other counties named. When the court announced this decision, the defendant obtained

leave of the court to withdraw his petition and application for a change of venue, and it was granted. No exception whatever was saved, nor do we understand how any could have been made to the action of the court in permitting the defendant to withdraw his petition. If error, it was of defendant's own coinage. Revised Statutes, 1889, sec. 4115. His proposition that the court had no power to permit him to withdraw his application is without merit. Had the court refused to permit him to do so, and sent the case to another county, it requires very little stretch of the imagination to anticipate a motion to remand the case to Cole county, because he had the constitutional right to be tried in this county. The record entry clearly shows the court considered that defendant had abandoned the effort to obtain a change of venue. No more was required. *State v. Hayes*, 88 Mo. 344, and the cases of *State v. Gleason*, 88 Mo. 582, and *In re Whitson*, 89 Mo. 58, have no bearing upon the construction to be given this record. Here, *no order of removal was ever made* to any other county. It was entirely competent for the court, before entering an order changing the venue, to permit the defendant to withdraw his application. In *State v. Hayes*, 88 Mo. 344, the order had been made appointing another judge, and he had accepted, and entered upon the discharge of his duties. The cases are dissimilar in fact and in principle.

III.    Having withdrawn his application for change of venue, on account of the prejudice of the inhabitants of Cole county, the defendant at the adjourned December term, 1890, filed his affidavit, supported by two others, that Judge E. L. EDWARDS was prejudiced against him, and would not afford him a fair trial. Thereupon Judge EDWARDS sustained this application, and set the cause for April 20, 1891, 'during the same term, and recited that he would call another judge to

The State v. Noland.

try the cause. On that day the circuit court of Cole county was in session, and Judge EDWARDS announced that he had selected Judge GAVON D. BURGESS of the eleventh judicial circuit to try the cause, and had notified him, but, owing to business in Judge BURGESS' court, he could not attend until May 4, 1891, whereupon he adjourned said Cole county circuit court to May 4, 1891. The court did not call in another judge nor reset the case further than to make this announcement. All these facts appear of record. On the fourth of May, Judge BURGESS appeared, and the record recites that he had been selected by Judge EDWARDS to try this case. Both parties announced ready, the cause was tried and resulted in a mistrial, and the court adjourned till court in course. At the May term, after Judge EDWARDS finished his business, he adjourned court to July 6. On the sixth of July, Judge BURGESS again appeared, both sides announced ready, and the cause proceeded, and the defendant was convicted. It is now claimed that Judge BURGESS had no authority to hear this cause at either of said terms, and the proceedings before him were *coram non judice*. Such a construction of the statute as is here sought by defendant would bring the law into disrepute.

When a defendant after his case is called makes his affidavit against the judge, it then becomes the duty of the judge to order an election or call in a judge of another circuit to hear the cause. In the very nature of things, he cannot always know what time the other judge's duties will permit him to sit in the cause. If he adjourns over to a day certain, and on that day the judge called in has not been able to come, on account of his other duties, but has informed the court what day he will be present, it is now said that this presumably unavoidable delay must result in calling still another judge, or holding an election. But

the court had determined no suitable person would be chosen by an election. If he could call another judge, why could he not call the same one, and, if he did not call another, the first call was good and continuing, until regularly set aside for cause, or the judge called appears and disposes of the cause. We see no error nor even irregularity in the proceedings, by which Judge BURGESS was selected. We give this statute a *working construction*, and shall not nullify it by technical refinements.

IV. There was no error in overruling the demurrer to the evidence. It was sufficient, if the jury believed it, to convict the defendant. The testimony of the experts, who examined the treasury at the request of Governor Francis, disclosed that the defendant was a defaulter to the amount of $32,745.69, and this was supplemented by evidence of admissions of the defendant to the state auditor and others; and by the proof of drawing the draft for $1,150 on the Franklin Bank, and charging the same against himself for $1.50 only, and of the drawing of the draft for $589 in favor of R. E. Wilson, and failing to charge himself at all with these sums.

V. In this connection, it is sufficient to say, that the objection of the defendant to the Wilson draft, because it was not stamped with the treasurer's seal, was properly overruled. It tended to prove that by this means he unlawfully withdrew from one of the depositories of the state $589. Certainly in a criminal prosecution it does not lie in the mouth of the defendant to complain of this bank for honoring his check, drawn in his official character, because he himself had omitted the seal. It is sufficient to show that in this way whether rightfully or wrongfully, by color of his official position, he possessed himself of this public money and converted it to his own use. It matters

not that the state might have refused the voucher in a settlement with the bank. That question is not in this case. *State v. Findley,* 101 Mo. 217.

VI. The defendant complains that the court refused his offer "to prove that settlement was made, that the notification was extended to his bondsmen, and that a settlement was made."

There was no error in refusing this offer. It did not meet the issue tendered by the state. It has never been the law, that one charged with a larceny could be acquitted by proof of the fact that the owner had subsequently recovered the stolen goods. *Butler v. State,* 9 S. Rep. (Ala.) 191.

The offer is so indefinite it might well have been excluded on that ground alone. We can better understand the purport of the offer, by connecting it with the offer, in the record, to read the biennial report of L. V. Stephens, the successor of defendant in the treasury, showing that when he assumed his duties he found recorded in his office in journal M, page 86, a certificate of the committee appointed by the governor to the effect that there was a deficit of $32,745.69 due from defendant, and that at different days from April 16 to May 31, 1890, he received said sum with interest from defendant's bondsmen. This offer implies that the shortage did exist; that the defendant had converted the money as charged, but his bondsmen had afterwards paid it into the treasury, whether voluntarily, or at the end of a suit, the offer does not disclose. This evidence would not destroy the criminality of his previous act. It was clearly incompetent. No authority for such evidence is cited, and, on principle, we think none can be. 3 Greenleaf on Evidence, sec. 156; 2 Russell on Crimes, 6; *Eckels v. State,* 20 Ohio St. 508.

VII. The defendant offered to prove by a witness, P. T. Miller, that E. T. Noland, as state treasurer, had to his account with the Bank of Commerce in New York City in the redemption bond and redemption coupon accounts, on the seventh of March, the day that defendant resigned, the sum of $32,745.69, and that the committee did not deduct that from his account in their report. This evidence was excluded, and this ruling is assigned as error. The motion for a new trial does not specify the exclusion of this particular evidence, but assigns generally as error that "the court excluded from the jury proper, competent and relevant testimony offered by the defendant." This was sufficient. It has been the practice in this court from its organization. Nothing more definite has ever been required. A different ruling would unsettle the practice and work great injustice. The objections to testimony must be specific to be available in the appellate courts. These exceptions thus made are saved at the time, and the trial court's attention specifically called to its rulings, and no injustice is done the opposite side or the court by not incumbering the motion for new trial with these matters *a second time*. We adhere strictly to the rule requiring specific objections to testimony to be made at the time it is offered, but we do not think any good would be subserved by requiring the specific objections to be again repeated in the motion for new trial.

Our attention has been called to a decision of the Kansas City court of appeals in *Shockley v. Railroad*, decided at the October term, 1891, holding differently, also the briefs on the motion for rehearing by respondent. That case is not supported by any decision of this court, and is certainly contrary to the practice of the bar of the state. The court of appeals cites as authority for its decision *Edmonds v. State*, 34 Ark. 737. The

supreme court of Arkansas devotes this much attention to the point: "The fifteenth and sixteenth grounds are general assignments that the court erred in admitting and in excluding evidence, pointing to nothing, and are too indefinite." No authority is cited, and no other reason assigned. The only other court cited by Judge THOMPSON, as holding to the view expressed by the court of appeals, is the supreme court of Indiana. We have examined the cases he cited, and others in that state, and they support the learned author's text. The reasons assigned are that the exception is too indefinite, and is unjust to the trial court. We are not sufficiently conversant with the practice in that state to express an opinion one way or the other as to the conclusiveness of this reasoning under that procedure, but this objection cannot apply in this state. Here, according to our practice, we require the counsel objecting to any piece of evidence to give his *specific grounds of objection at the time*. Thus the attention of the trial court is called directly to the evidence, and the grounds of incompetency or competency, if excluded. These objections are preserved at the time by an official stenographer, a sworn officer of the court. When the motion for new trial assigns as error the admission or rejection of evidence, it is the usual practice of counsel to call the attention of the court orally to the rulings of which he complains. But if counsel feels indisposed to reargue at length a matter to which he has once called the court's attention, and which he presumes the court remembers, the judge can, if he desire, have his stenographer read over his notes of his rulings, and refresh his mind. There can be no excuse under our present system for the trial judge being ignorant of the grounds for a new trial. The attorneys are officers of the court and no honorable attorney would hesitate when requested by the court to specify the evidence of which he complains.

Of course, after it reaches the appellate court, there cannot under our rules be anything in the point. Here, every point is required to be stated with the utmost particularity. Trial judges usually remember the points in their cases. They keep in mind the facts and rulings in the cases they try. If the objection was specific in the first instance, he will remember it. If it was not, of course it amounts to nothing anywhere, in the trial court or here. We regard the decision in *Shockley v. Railroad, supra,* as unsettling a practice too long established and too well understood, and it will not be followed, notwithstanding the high respect we have for the court that rendered it, and it is overruled.

Recurring then to the offer of defendant. Of what avail would it have been to defendant to show that the $32,745.69 was on deposit with the Bank of Commerce on the seventh of March, in the bond redemption account? He was not charged with embezzling any of that fund in the indictment or the state's evidence. By the laws of this state, the state treasurer, with the approval of the governor and attorney general, is required to select a bank in New York City as the fiscal agent of this state. All the interest on the bonded indebtedness of this state is payable at said bank, except the interest on the state school and seminary certificates. This bank is required to open an account with the treasurer, crediting him with the amount received from the state, and charging him with the coupons and bonds paid by it for the state. This fiscal agent is also required to certify to the *treasurer and state auditor and governor, each,* the amount received by it for the payments of interest on bonds of the state as aforesaid; also the amount received for the payment of maturing bonds or bonds called in for redemption, and said bank is charged therewith, both by the auditor and treasurer. The coupons and bonds are then paid from time to

time by the fiscal agent, the bank in New York, *without other warrant therefor*. Section 8658 provides that the state auditor shall, at least fifteen days before the interest is due, or the state bonds mature, draw his warrant on the state treasury for the payment of said bonds or interest or both. Section 8661 provides that the governor, attorney general and treasurer may withdraw funds of the state from the fiscal agent, if at any time they deem the safety of the public money requires it.

Now then this offer simply offered to show there was $32,745.69 in the hands of the fiscal agent of the state. It is not pretended that defendant was charged with this sum by the experts or other witnesses in stating his account with the state. It did not enter the account on either side. This sum had *already been lawfully drawn from the treasury* by the warrant of the auditor. It had been set apart as a special fund to meet the bonded obligation of this state as it matured from time to time. This money was not subject to the defendant's draft or check without the consent of the governor and state auditor. The Bank of Commerce was daily paying it out to the creditors of the state, if it was there; and was duly authorized to pay it out on the interest and bonds of the state. That fund was placed there for the purpose of maintaining the enviable position of this state in the financial world. In the very nature of things, it was not subject to the private checks of the treasurer. He alone could not remove it or change the fiscal agent. Revised Statutes, 1889, sec. 8661. It is very plain that the offer on its face had nothing to do with the case on trial. Defendant had no control over that fund. He could not place a dollar in that fund without the warrant of the auditor, nor could he withdraw a dollar on his own private check. The court properly excluded this evidence. It consti-

tuted no defense whatever to the case made by the evidence.

Defendant complains of the instructions given by the court. The fourth and fifth instructions are as follows: "4. If the jury believe and find from the evidence that the defendant did, within three years prior to the finding of the indictment, receive into his possession the money mentioned in the indictment, or any portion thereof to the value of $30 or more, and that he received the same into his possession as state treasurer of the state of Missouri, and, by virtue of his office as treasurer, and that he did, within three years prior to the finding of this indictment, at the county of Cole, in the state of Missouri, feloniously, unlawfully and intentionally embezzle and fraudulently convert the same to his own use, you will find defendant guilty of embezzlement as charged in the indictment, notwithstanding the jury should believe and find from the evidence that the defendant intended at some future time to restore said money.

"5. The court instructs the jury that the law presumes that every man intends the natural and probable consequences of his own acts, and if you find from the evidence that the defendant unlawfully converted the money, alleged in the indictment to have been embezzled, to his own use, you will be authorized to infer therefrom the criminal intent, and that he did intend at the time to embezzle and convert the same to his own use, and to deprive the state of it."

The first, second and third instructions are identical in principle with the fourth, save they are confined to the first, second and third counts, and look to a conviction of the defendant, under separate counts. In *State v. Manley*, 107 Mo. 364, we held that an instruction "that, if the jury find from the evidence that the defendant unlawfully, fraudulently and felo-

niously converted to his own use money he had collected by virtue of his official position, they should find him guilty," was not erroneous as ignoring the criminal intent. We are asked by appellant to overrule that case.

Instructions are required to inform the jury as to the law of the case. The statute has declared that if a public officer convert to his own use public moneys in his hands by virtue of his office, in any manner whatever, he is guilty of a felony. In the *Manley case* the jury were told that the conversion must be fraudulent, unlawful and felonious. We thought then, and think now, that when the jury found the defendant had fraudulently, unlawfully and feloniously converted the moneys he had received officially that he was guilty under this statute. These words in and of themselves supplied the idea of intentional and wilful wrong-doing, and no additional formula was needed to impress on the jury the difference between an accident in bookkeeping, or a mistake made in good faith, or by oversight, and an intentional or wilful misappropriation of trust funds. We see no reason for overruling *State v. Manley.* It follows that the instructions, numbered 1, 2, 3 and 4, as they are couched substantially in the same language as the instructions in the *Manley case,* are not open to the criticism made on them.

But the learned judge who tried this cause told the jury that they could find the intent from the unlawful conversion. It is claimed by counsel this is a dangerous doctrine. The purpose of the statute is to prevent the embezzlement of trust funds. The frequency with which these embezzlements occur doubtless induced the passage of the act. It is not too rigid a rule to require of a public official that he shall not convert to his private use the taxes exacted for the

maintenance of the government.    The danger lies in
the other direction, that of failure to enforce the law of
the land impartially.    But in this case there can be no
possible complaint on this point, for the court in the
first, second and third instructions given at the instance
of defendant expressly required the jury to find that
the defendant not only unlawfully, wilfully and felon-
iously converted the money, but required that he must
have done it *"with the intent at the time* to convert it to
his own use," etc., and, moreover, the jury were
instructed that, "feloniously meant a wrongful act
wilfully done."    Thus supplemented, the instructions
met every objection the defendant urges in this connec-
tion.

The defendant complains of the seventh instruc-
tion for the state, which is as follows:    "The court
instructs the jury that in returning their verdict they
may, if they believe the defendant to be guilty, specify
upon what count they find him guilty; and you are
instructed that you may find him guilty or not guilty
upon one count, and guilty or not guilty as to the other
counts; or you may return a general verdict of guilty
or not guilty, if you so find and believe, without speci-
fying upon what count you so find.    And, if you find
him guilty upon any one or all of the counts in the
indictment, you should assess his punishment at
imprisonment in the penitentiary for not less than two
nor more than five years."

It is insisted that, if the ruling in *State v. Harmon,*
106 Mo. 635, is adhered to, this instruction constitutes
reversible error.    In *State v. Harmon, supra,* there were
fifteen counts in the indictment.    The first was for
embezzlement, and was dismissed, at the close of the
evidence, the other fourteen were for separate grand
larcenies.    The defendant was tried on all of them, and
the evidence admitted on all.    There was no pretense

that all the counts covered the same larceny, either in the character of the goods stolen or the time at which they were taken, or the value. The indictment clearly meant to charge distinct offenses, and the proof offered tended as clearly to prove different offenses. The jury returned a verdict of guilty of petit larceny, without specifying under what count they found defendant guilty.

The defendant *saved his objections specifically to the verdict both in his motion for new trial and in arrest.* We reversed the cause for error in the instructions. The difficulty then suggested itself that the defendant, by force of this verdict, was acquitted of the charge in at least thirteen of the counts. As the case was to be remanded, it was apparent the jury should have specified of what particular larceny they found him guilty, in order that he might be again tried on that alone. We held then, without intending to shake the authority of any other case of this court, that a general verdict under such a state of case was erroneous. We cited a number of cases that sustained that view. Upon a re-examination of that question, we have been unable to find any case in this state, having the same state of facts as appeared to us in the *Harmon case.*

In *State v. Porter*, 26 Mo. 201, this court held that, "where the offenses are distinct and of a different nature, the court ought to compel an election as to which count the state would proceed, save when the offenses are cognate or the joinder permitted by statute." In that case, the statute expressly authorized the joinder.

In *State v. Whitton*, 68 Mo. 91, the indictment contained two counts. The jury found defendant guilty on the first count, and failed to make any finding on second. This court said: "While it would have been more in conformity with regularity of procedure to

have entered a *nolle prosequi* as to that count, or to have found in defendant's favor in regard thereto, * * * it may be regarded as a virtual acquittal,'' as to the second count. There the verdict specified the count.

In *State v. Jennings*, 18 Mo. 435, it was clear that all the counts charged one and the same offense, a homicide, and a general verdict was sustained.

In *State v. McCue*, 39 Mo. 112, the indictment contained three counts, one for robbery, one for larceny and the other for receiving stolen goods. The jury found defendant guilty of robbery, but the court in the opinion says that all three of the counts were intended for one and the same transaction. Both because the verdict was *definite* as to the robbery count, and because they all related to one transaction, that was sustained.

In *State v. Hays*, 78 Mo. 600, the defendant was convicted on *one* count. In *State v. Testerman*, 68 Mo. 408, the different counts all referred to one transaction, the homicide. To the same effect is *State v. Core*, 70 Mo. 491. So it is well settled that it is entirely proper, and indeed the uniform practice, to insert several counts, charging the felony in different ways, with a view to meet the varying phases of the evidence, and the court will not in such cases compel an election, and will sustain a general verdict. 1 Bishop on Criminal Procedure, sec. 457, note 3, and secs. 458, 459.

Yet, where, for the purpose of proving the charge made in any single count, evidence is introduced tending to prove several separate and distinct offenses, ''it is the duty of the court, on motion of the defendant, before he is put upon his defense, to require the prosecutor to elect upon which particular transaction he will rely for conviction.'' *West v. People*, 27 N. E. Rep. 34;

*State v. Crimmins,* 31 Kan. 376; 1 Bishop on Criminal Procedure, sec. 457.

In *Mayo v. State,* 30 Ala. 32, the rule is thus stated: "The principle to be extracted from the authorities is that the court should always interpose, either by quashing the instrument, or by compelling an election, where an attempt is made as manifested, by either the indictment or the evidence, to convict the accused of two or more offenses growing out of distinct and separate transactions; but should never interpose in either mode, where the joinder is simply designed and calculated to adapt the pleading to the different aspects in which the evidence on the trial may present a single transaction." *Goodhue v. People,* 94 Ill. 37.

Now in the *Harmon case,* so long as the count for embezzlement remained, the court properly received the evidence of the different transactions, all tending to prove the one charge, but when that was dismissed there were fourteen distinct grand larcenies charged. When the jury found the defendant guilty of petit larceny, and did not specify the count, he could not know for the purposes of his motion for new trial upon what they based their finding. We are still satisfied that case was correctly decided upon the facts surrounding it, and that it accords with principle and authority. *Commonwealth v. Carey,* 103 Mass. 214; 2 Thompson on Trials, sec. 2640.

But it is equally plain from the foregoing discussion that in cases like the case at bar it is the common practice to charge the same offense in different counts, and no election will be required, and a general verdict will be sustained. *State v. Houx,* 109 Mo. 654.

In *People v. McKinney,* 10 Mich. 54, the defendant was state treasurer, and was charged with embezzlement of public moneys. The information contained eight counts; the *first* charged the embezzlement of

$4,000 on the fourth of August, 1860; the *second,* "the sum of other $4,000," September 4, 1860; the *third,* "the sum of other $4,000," October 4, 1860; the *fourth,* "the sum of other $4,000," November 3, 1860; the *fifth,* "the sum of other $4,000," December 4, 1860; the *sixth,* "the sum of other $4,000," December 12, 1860; the *seventh,* "the sum of other $4,000," December 12, 1860; and the *eighth,* "$3,000," December 31, 1860. *A general verdict of guilty was rendered* and *sustained in that case.* That court, on pages 94 and 95 of the opinion, uses the following language: "In point of · law there is no objection to charging several distinct offenses of the same nature, whether felonies or misdemeanors, in the same indictment. It is only upon the principle of the joinder of different offenses that several counts are allowed at all; though it is true several counts are generally inserted for the purpose of meeting the different phases of evidence of the same, or substantially the same, transaction. In many, perhaps most, cases, it cannot be certainly known from the face of the indictment alone whether the several counts refer to entirely distinct transactions, and are intended to charge separate and distinct offenses, or not. In such cases this point is only rendered certain by the statement 'or' opening of the prosecuting counsel, or from the particulars where such are furnished, or by the evidence in the progress of the trial. But, even when it appears clearly in any way that entirely distinct offenses are intended to be charged and proved, it is no objection in point of law; neither ground for demurrer nor in arrest of judgment; and the only way in which the objection can be rendered available is by *motion to quash, before defendant has pleaded,* or, *at least,* before the *jury are sworn, or by calling upon the prosecution to elect in the subsequent proceedings in the cause.* 1 Chitty on Criminal Law, 248, 249,

253, and authorities cited; Roscoe on Criminal Evidence, 231–234, and cases cited."

In that case the several drafts for $4,000 were drawn respectively on the fourth days of August, September, October, November, December, and December 12 and 31, aggregating $23,257.49. In that case, as in this, the prosecuting attorney was not called upon to elect. To the same effect are the cases of *Commonwealth v. Holmes*, 137 Mass. 248; *State v. Tuller*, 34 Conn. 280–299.

In this case, the evidence offered by the state tended to prove the embezzlement of $32,745.69 of the public moneys. The state could not have been required to elect to proceed upon any one of these counts. There was clearly no misjoinder.

Embezzlement is necessarily peculiar in some of its features; and particularly so when a public officer obtains funds by virtue of his office. Unlike the ordinary clerk, he has no one to watch over his manner of doing business. Manifestly, if the rigid rules of the common law, requiring the state to show exactly *when* he received certain moneys, the *character* of the money, whether drafts, bank notes or coin, and their denominations, and *exactly how* he effected the misappropriation, were to obtain, then the statute would be a dead letter. Accordingly, the courts of this country, with great unanimity, have not considered the common-law precedents as controlling under similar statutes, and while requiring a substantial compliance with the statutory requirements, and having due regard to the constitutional guaranties, they have construed this law liberally. The fiduciary relation enables the officer to convert funds and securities to his own use, and at the same time renders it almost impossible for the state, in advance, to charge *when* and *how* it was done.

Embezzlement often consists of a *series* of acts, done at different times, but with a common design, and ultimately the one fact appears, that there is a shortage; all that can be said is that there is a certain deficit, the public funds have been embezzled to a certain amount. To require the state to select some one fact, and elect to make a case on that alone, would often result disastrously, and crime go unpunished. Consequently, when the defendant is apprised of the charge of the deficit, of the amount claimed, of the official character in which he received it, and his conversion thereof, he has notice of the nature and cause of the accusation. So here, the defendant was apprised that the state charged that he had embezzled $28,552.24, that it was moneys he had received by virtue of his office as state treasurer; that this deficit would be shown by the books of his office; that proof of the charge in either count involved the proof of all, and the proof of all would be required to prove one; it was substantially one transaction. In the nature of things, he alone could account for what he had done with the money. It is true the state traced three different sums into his hands, but for aught that this record discloses he *converted* it *all at one time*. The receiving is one thing, the *conversion*, another. To say merely because the prosecuting attorney made the charge in three counts that this made three distinct crimes, would, in our opinion, give the statute an impractical construction. The circuit court regarded it as one transaction; one, in effect and practical result. The attorney general prosecuted on this theory; the court instructed on this view, and the jury found their verdict on this aspect of the case. It was largely a question of fact. There was no error in the seventh instruction, and the case comes within the rule in this state, from which the *Harmon case* was distinguished at the time. *Ker v.*

*People*, 110 Ill. 627; Bishop on Criminal Procedure, 460, note; *Rex v. Dunn*, Car. Cr. L. [3 Ed.] 82; *People v. McKinney, supra; Gravatt v. State*, 25 Ohio St. 162; *Jackson v. State*, 74 Ala. 26; *State v. Houx*, 109 Mo. 654. And it would seem this was the view taken by the eminent counsel for defendant. Neither the motion in arrest or for new trial *specified* the finding of a *general verdict*, as ground for new trial or in arrest, and but for the objection to the seventh instruction we would not have been required to examine this point at all. *Sweet v. Maupin*, 65 Mo. 68-73; *Persinger v. Railroad*, 82 Mo. 196; *Fickle v. Railroad*, 54 Mo. 219; *Alexander v. Relfe*, 74 Mo. 495.

Misconduct of the jurors and the officers in charge is the remaining ground. On the hearing of the motion for new trial, the state read various affidavits, contradicting the charges of misconduct alleged against the sheriff and the jurors. The oaths in these affidavits were administered by W. S. Davison, Esq., the prosecuting attorney, who is also a notary public for Cole county. The defendant endeavored to have the court strike out these affidavits, on this account, which was refused. He assigns this as error. The notary had the power to administer the oaths, and there was no error in the action of the court in this respect.

The trial court heard the charges against the jurors and deputy sheriff. It was peculiarly its province to try that fact, and there is nothing in the record that would justify us in interfering with his finding.

We have endeavored to examine every fact in this record, and have accorded every point made for reversal careful consideration, and our conclusion is that there was no error that tended to the prejudice of the substantial rights of the defendant, and the judgment is accordingly affirmed. All of this division concur.