## THE STATE v. ROLLINS, Appellant.

### Division Two, February 21, 1905.

1. **INFORMATION: Amendment: Verfication.** The court did not err in permitting the prosecuting attorney to amend the infortion by properly verifying it.

2. ——: **Different Counts: Charging Same Offense: Election.** Where different counts in an information all relate to the same transaction and charge the same offense, no error is committed in overruling a motion to compel the State to elect.

3. **CONFLICT IN TESTIMONY: Province of Jury.** Where there is an irreconcilable conflict in the testimony, the appellate court will not interfere with the verdict of the jury whose province it is to pass upon the facts.

Appeal from Osage Circuit Court.—*Hon. W. A. Davidson,* Judge.

AFFIRMED.

*Herbert S. Hadley,* Attorney-General, for the State.

(1) The information not being verified when filed the verification was made before trial by amendment by leave of court. This amendment was authorized by the statute, section 2481, Revised Statutes 1899. State v. Patton, 96 Mo. App. 32. (2) The information charges the crime in the form many times approved by this court, and is sufficient. It is not a valid objection that the information charged the offense in different counts, that the court overruled a motion to compel the State to elect, or that a general verdict was rendered. State v. Schmidt, 137 Mo. 266.

FOX, J.—The defendant was put upon trial in the circuit court of Osage county on an information

charging him with the crime of murder in the first degree, of Louis Lange, at said county, on the thirteenth day of June, 1903. The court submitted the case to the jury upon instructions in murder in the first degree, murder in the second degree, manslaughter in the fourth degree, and self-defense. The jury returned a verdict finding the defendant guilty of manslaughter in the fourth degree, and assessing his punishment at a fine of $250 and three months in the county jail. From the judgment on that verdict, the defendant appealed to this court.

The information contains three counts. The first charges the defendant and Jesse Rollins jointly, the second charges Jesse Rollins as principal, and the defendant as accessory before the fact, and the third charges the defendant as principal and Jesse Rollins as accessory before the fact.

The facts in this case are, substantially, as follows: That there was a picnic held at a small place called Byron in Osage county, on Saturday, the thirteenth day of June, 1903; that the defendant and his son, Jesse, the deceased, Louis Lange, and three of his brothers, were in attendance at the picnic; that about four or five o'clock in the afternoon an affray occurred in which the defendant and his son on the one side, and the deceased and his brothers on the other, participated; that knives were used by both sides; that in the affray Louis Lange received two stab wounds on the left side, one on each side of the eighth rib, from which he died on the fifteenth day of June, 1903.

As usual in such cases, there is much conflict in the evidence as to who provoked the difficulty, and as to the disposition of the parties to stop it and withdraw therefrom, or to continue the fighting, after it began.

On the part of the State the evidence tends to prove that about a year or so before this difficulty Jesse Rollins, son of the defendant, and the Lange

boys had had trouble at a party, and that the defend-
ant then manifested ill-will and made threats against
the Lange boys; that the fight resulting in the death of
Louis Lange was brought on by Jesse Rollins, defend-
ant's son, on the picnic ground, near a lemonade
stand, by boasting of his manhood in the presence of
Fritz and Henry Lange, and then making an assault
with a knife upon Henry Lange and stabbing him; that
Henry Lange retreated, opened his knife, and called
upon the constable to arrest his assailant; that the
constable arrested and disarmed Jesse Rollins and
started away with him; that the defendant came up
from the opposite direction, carrying an open knife in
his hand, and met the constable with his son Jesse;
that the son asked the defendant for his knife, and
that defendant answered, "If there is any cutting to
be done, I will do it myself;" that Henry Lange came
up with an open knife in his hand and said, "Jarve
(meaning the defendant) let's stop this right here,"
and that the defendant replied, "Put up your knife
and I will;" that Henry Lange thereupon closed his
knife, put it in his pocket and started to walk away;
that the defendant did not put up his knife, but immed-
iately assaulted Henry Lange with the knife and stab-
bed him in the back; that in the fight that ensued the
deceased, Louis Lange, came to his brother's aid and
that the defendant grappled with him and, stabbing
him in the side, inflicted the fatal wound from which he
died two days later.

The evidence on the part of the defense tends to
prove that Henry Lange was the aggressor both at
the lemonade stand and again when he met the de-
fendant; that the defendant was going to get his horse
to go home when he saw the constable with defend-
ant's son, Jesse, under arrest, coming in that direction
and followed by a crowd with Henry Lange carrying
his open knife; that the constable said, "Jarve, I got
your boy under arrest; he and the Lange boys got into

some trouble, and I want you to take care of him;"
that the defendant said, "Give him to me and I will
take him home; we don't want any trouble here; I will
take him home;" that that was the first knowledge de-
fendant had of the trouble; that Henry Lange came up
and said, "Jarve, Jesse has cut me, and God damn him,
I am going to kill him;" that defendant tried to stop
the trouble by attempting to quiet Henry Lange, but
that the latter ran at defendant's son, Jesse, with a
fence post and defendant "hurried in there to hit him
with his fist;" that defendant did not take out his
knife till he clinched with Henry Lange; that defend-
ant did not cut the deceased, Louis Lange and fought
only in defense of himself and his son.

At the close of the evidence the cause was submitted
to the jury and, as before stated, they returned a ver-
verdict of guilty of manslaughter of the fourth degree.
Motions for new trial and in arrest of judgment were
duly filed, and by the court overruled, and defendant
prosecuted his appeal to this court, and the cause is
now here for consideration.

### OPINION.

Appellant is not represented in this court, and we
are without any brief or suggestions indicating the er-
rors of the trial court upon which a reversal is sought
in this cause; however, we have examined the record
presented and will give the complaints, as indicated
in the motions for new trial and arrest of judgment,
such consideration as they merit.

First, complaint is made that the court improp-
erly permitted the amendment of the information.
This complaint is directed to the action of the court in
granting leave to the prosecuting attorney to properly
verify the information.

This was not error; the authority to amend infor-
mations is expressly granted by the provisions of sec.

2481, Revised Statutes 1899. The authority to add the proper verification to an information is clearly embraced within the provisions of the section cited.

The information contains three counts, and charges the offense in each count, as is herein indicated in the statement of this cause. Defendant filed his motion to compel the State to elect upon which count in the information it would proceed to trial; this motion was by the court overruled.

The counts in this information all relate to the same transaction, and charge the same offense, and there was no error in the action of the court in its refusal to compel such election. [State v. Turner, 63 Mo. 436; State v. Porter, 26 Mo. 201; State v. Sutton, 64 Mo. 107; State v. Noland, 111 Mo. 473; State v. Schmidt, 137 Mo. l. c. 270.]

Defendant duly preserved his exceptions to the giving and refusing of instructions at the trial, and the instructions given and refused are presented in the record.

The court upon the trial gave nineteen or twenty instructions and we see no necessity for burdening this opinion by the reproduction of them. It will suffice to say that we have read and fully considered them, as applicable to the facts developed upon the trial. They were such in form as have frequently met the approval of this court, and fully covered every phase of this case to which the testimony was applicable. Those refused were properly so for the reason that they were fully covered and the subjects treated of were embraced in those given by the court.

Upon the proposition that the testimony was insufficient to sustain the verdict, we find this case no exception to the general rule in cases of this character; there is an irreconcilable conflict in the testimony. The testimony introduced by the State clearly warranted the submission of the case to the jury, and, if believed by them, furnishes ample support for the con-

clusions reached. On the other hand, the evidence introduced by defendant, if believed by the jury, would fully warrant a verdict of not guilty. Under our system, who is it that must settle this conflict? There can be but one answer, and that is *"the jury."*

The witnesses were before them and doubtless all the tests as to their credibility were applied, and it was the special province of the jury to pass upon the facts detailed by the witnesses, and, as has been uniformly announced by this court, the province of the triers of the facts should not be usurped by the appellate court.

An examination of the record before us fails to disclose any substantial reversible error. The judgment of the trial court should be affirmed, and it is so ordered.

All concur.