## Ex parte MONTGOMERY.

### (District Court, S. D. New York. July 13, 1917.)

### No. 118.

1. CONSPIRACY ☞40—PERSONS LIABLE—NECESSITY OF PRESENCE.

   To be legally charged with the crime of conspiracy, a person need not have been at the place or within the state in which the conspiracy is alleged to have been committed.

2. EXTRADITION ☞30—PERSONS SUBJECT TO EXTRADITION—"FUGITIVE FROM JUSTICE."

   While a person may do something in one state resulting in the commission of a crime such as conspiracy in another state and may be indicted therefor, he cannot be extradited as a "fugitive from justice" under the constitutional provisions and the statute providing for extradition unless physically present in the state in which the crime is alleged to have been committed at the time it was committed.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fugitive from Justice.]

3. EXTRADITION ☞21—NATURE AND GROUNDS.

   The right of extradition is not founded on any state statute, comity, or contract. but upon the Constitution and laws of the United States.

4. EXTRADITION ☞30—PERSONS SUBJECT—"FUGITIVE FROM JUSTICE."

   When an alleged fugitive from justice was in the demanding state at the time when the offense was committed, he is, when thereafter found in another state, presumed to be a fugitive from justice, no matter for what purpose or reason nor under what circumstances he left the demanding state.

5. CONSPIRACY ☞43(12)—EXTRADITION ☞32—INDICTMENT—VARIANCE.

   Conspiracy is a continuing offense, and the demanding state is not bound either upon the trial or in extradition proceedings by the specific date laid.

6. EXTRADITION ☞30—PERSONS SUBJECT—"FUGITIVE FROM JUSTICE."

   Where an indictment found in Pennsylvania charged a conspiracy on March 1, 1917, and at other times before and after that date, and within two years of the date of the indictment, a New York citizen who within the time laid in the indictment was in a portion of the state of Pennsylvania remote from the place where the crime is alleged to have been committed, on business foreign to the subject-matter of the conspiracy, and who on another occasion passed through the state of Pennsylvania on a through interstate train in company and in conference with one of his alleged coconspirators, is a "fugitive from justice," and subject to extradition on demand of the state of Pennsylvania.

7. HABEAS CORPUS ☞103—SCOPE OF INQUIRY—EXTRADITION PROCEEDINGS.

   On habeas corpus by a person arrested under an extradition warrant for surrender to another state for trial for conspiracy, the questions whether he committed any criminal act in the demanding state, or was in fact a coconspirator, are not involved, as those are questions to be determined upon the trial.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. HABEAS CORPUS ⚖➠85(2)—EVIDENCE—EXTRADITION PROCEEDINGS.

On habeas corpus by one arrested under an extradition warrant of the Governor, the warrant establishes a prima facie case that the arrest and direction for surrender to the demanding state are lawful and valid, and the burden is on the prisoner to show that he is not in fact a fugitive from justice, and such burden requires evidence practically conclusive.

Application by George F. Montgomery for a writ of habeas corpus to obtain his release from detention under a Governor's extradition warrant. Discharge denied.

Herbert Noble and Henry D. Estabrook, both of New York City, for relator.

R. H. Jackson, Dist. Atty., of Pittsburgh, Pa., and Robert S. Johnstone, of New York City, for the Commonwealth of Pennsylvania.

MANTON, District Judge. This relator, with Clarence F. Birdseye, Kellogg Birdseye, Joseph C. Watson, Robert R. Moore, and William D. MacQuestion, has been indicted by the grand jury of the county of Allegheny, state of Pennsylvania, on a charge of conspiracy under a Pennsylvania statute. The indictment charges that:

They "unlawfully did, on the 1st day of March in the year of our Lord one thousand nine hundred and seventeen, and at other times before and after said date, and within two years of the day of the taking of this inquisition, at the county aforesaid, and within the jurisdiction of this court, falsely and maliciously conspire and agree together to cheat and defraud the Pittsburgh Life & Trust Company, a body corporate, of its goods, moneys, chattels, and other property, and other dishonest, malicious, and unlawful acts then and there to do to the prejudice of the said Pittsburgh Life & Trust Company with intent in them then and there and thereby to defraud the said Pittsburgh Life & Trust Company, contrary to the form of the act of the General Assembly in such case made and provided and against the peace and dignity of the commonwealth of Pennsylvania."

The substance of the charge further is that the conspirators were to purchase a controlling interest of the stock of the Pittsburgh Life & Trust Company, the old board of directors were thereupon to resign, the conspirators were then to elect a board of dummy directors, and this board of directors, without adequate knowledge of the values of the respective properties to be exchanged, and deceived as to the real values of such properties by the conspirators, were to authorize the purchase of the bonds of the Dare Lumber Company, issued or about to be issued, and, to provide money for such purpose, they were to order the sale of certain of the assets of the said trust company, and all this notwithstanding the property covering the bonds of the Dare Lumber Company were either of no value or of inadequate value to secure the bonds. The indictment is questioned by Clarence F. Birdseye, who has made a similar application on a writ of habeas corpus. The result there expressed in an opinion will be handed down simultaneously with this.

This relator makes the point that he is not a fugitive from justice, and therefore should be discharged from custody. The crime charged is alleged to have been committed in the city of Pittsburgh on March 1, 1917, and "at other times before and after said date within two years of this date." In addition to a denial of his guilt, and, in fact,

⚖➠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of any of the transactions through which it is alleged the company was cheated or defrauded and of acquaintance with any of the board of directors, save one, he makes the point: First, that he was not physically present in the county of Allegheny on the 1st of March, 1917, nor in fact was he in said county from that day to the present time, nor for five years prior thereto; second, that he was not physically present anywhere in the state of Pennsylvania during any of the time except as a passenger on a through interstate railroad train on the 7th of February, 1917, going to and from points outside of the state of Pennsylvania, to wit, Baltimore, Md., and the city of New York, and this in company with Clarence F. Birdseye, his alleged coconspirator, and at one time in December, 1916, when he stopped at Philadelphia attending to some lumber business which did not have to do with the affairs of the Pittsburgh Life & Trust Company.

The relator testified that while on the train with Birdseye he discussed with him Birdseye's purpose of formulating in writing an option for the purchase of the properties of the Dare Lumber Company and the properties of the East Lake Lumber Company, so as to permit Birdseye to place the bonds of the Dare Lumber Company when issued; Birdseye representing that his client who would take the bonds was the Manhattan Life Insurance Company of New York City, and the Pittsburgh Life & Trust Company was not mentioned on this occasion.

I am not called upon on this application, to determine anything other than this question, whether a citizen of New York, indicted for the statutory crime of conspiracy in Pittsburgh, Allegheny county, Pa., who is conceded not to have been physically or personally present in that city or county within the time alleged in the indictment, or at any time since the alleged commission of the crime or prior thereto, shall nevertheless be deemed a fugitive from justice of Pennsylvania if it appears on several occasions during the time alleged in the indictment that he was a passenger on a through interstate railroad train bound for points outside of the demanding state, said trains running through a portion of the state remote from the locus in quo, on one occasion he having stopped at the city of Philadelphia to attend to some business foreign to the subject-matter of the indictment, and on another occasion he having been a fellow passenger with an alleged coconspirator. Both occasions were prior to the filing of the indictment charging crime.

[1, 2] It is not necessary that the relator should have been at the place where the crime is alleged to have been committed to be legally charged with the crime of conspiracy. He may be guilty without having either engaged in the conspiracy or done anything in pursuance of it while physically in the state of Pennsylvania. There are various crimes, including conspiracy, where a person may do something in one state which would result in a crime committed in another state. But he may be indicted in a given case in which he cannot be extradited. Under the constitutional provision and the statute providing for the extradition of fugitives from justice from one state to another, it is necessary that the defendant should have been physically present in the

state in which it is alleged that the crime was committed at the time when it was committed, in order to make him, by his subsequent departure from the state, a fugitive from justice. Hyatt v. Corkran, 188 U. S. 691, 23 Sup. Ct. 456, 47 L. Ed. 657; Ex parte Hoffstot (C. C.) 180 Fed. 242. As was said by Judge Holt in Ex parte Hoffstot, supra:

"The question in this case, therefore, is whether there was any proof before the Governor that Hoffstot was in the state of Pennsylvania when the crime or any material part of the crime with which he is charged was committed."

[3, 4] The right of extradition is not founded on any state statute, comity, or contract, but upon the Constitution and laws of the United States. Cockran v. Hyatt, 172 N. Y. 176, 64 N. E. 825, 60 L. R. A. 774. In the Hyatt Case, which went to the Supreme Court of the United States, 188 U. S. 691, 23 Sup. Ct. 456, 47 L. Ed. 657, it was held that the defendant could not be extradited where it was conclusively shown upon conceded facts that he was not within the demanding state at the time stated in the indictment nor at any time when the acts were, if ever, committed; in other words, that constructive presence will not suffice as a basis for extradition. The law is well settled that, if the alleged fugitive was in the demanding state at the time when the offense was committed, he is, whenever he is thereafter found in another state, presumed to be a fugitive from justice within the meaning of the Constitution and the laws of the United States, no matter for what purpose or reason nor under what circumstances he left the state. Appleyard v. Mass., 203 U. S. 222, 27 Sup. Ct. 122, 51 L. Ed. 161, 7 Ann. Cas. 1073; McNichols v. Pease, 207 U. S. 100, 28 Sup. Ct. 58, 52 L. Ed. 121; Marbles v. Creecy, 215 U. S. 63, 30 Sup. Ct. 32, 54 L. Ed. 92; Reed v. United States, 224 Fed. 381, 140 C. C. A. 64.

[5, 6] While the indictment here mentions specially but a single day, it also alleges a conspiracy claimed to have been hatched during two years preceding the indictment. Conspiracy is a continuando crime, and the rule is now well settled that the demanding state is not bound either upon the trial or in the extradition proceedings by the specific date laid. While the relator was not in the locus in quo during the period it is alleged the crime was committed, he was within the demanding state and in the presence of a coconspirator on an interstate train. The circumstances of the relator's presence in the demanding state during this period do not establish the impossibility of his participation in the conspiracy. The crime charged did not require his presence in the locus in quo. A conspiracy may be a continuing offense. Indeed, it has been held to be a purely continuous offense. United States v. Kissel, 218 U. S. 601, 31 Sup. Ct. 124, 54 L. Ed. 1168; Hyde v. United States, 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; United States v. Greene (D. C.) 115 Fed. 343.

Learned counsel for the relator have referred to Judge Holt's reference in the Hoffstot Case of the refusal of Governor Fort of New Jersey upon an application for requisition upon the Governor of Illinois for extradition of J. Ogden Armour. Armour, with others, was indicted in New Jersey for conspiracy to produce an artificial scarcity

in the supply of meats and to increase the price thereof. The proof upon which it was claimed that he was a fugitive from the justice of New Jersey was contained in an affidavit of the chief steward of the steamship Kaiser Wilhelm II that on April 28, 1908, Armour left the city of Hoboken upon that ship on a voyage to Bremen, and that he returned passing through Hoboken on his way to Chicago. Judge Holt said:

"In this case, if the only evidence of Hoffstot's presence in Pennsylvania during the time in which it is alleged that he engaged in the conspiracy had been that he passed through the state as an incident of a journey, as, for instance, that he went from Chicago to New York over the Pennsylvania Railroad, I should have no doubt that the proof of his commission of the crime, or any material part of it, in the state of Pennsylvania, was insufficient."

And counsel argued that the case supposed by Judge Holt is the one judicial utterance that they are able to find that is absolutely in point. The difference, however, is that in this relator's case it is established by his own admission that the defendant was in conference with the coconspirator on an interstate train passing through Pennsylvania, although distant from the county where he is charged with crime, during the period mentioned in the indictment as the time the crime was committed.

As Judge Shearn said in People ex rel. Ireland v. Woods, 177 App. Div. 1, 163 N. Y. Supp. 991:

"True, his stay was short on each occasion, but there was abundance of opportunity during his stay, not only to confer with his alleged confederate, but to hand to his confederate the letters of credit and the bogus checks which, it is alleged, were used to accomplish the overt criminal acts."

The same reasoning was applied in Meeker v. Baker, 142 App. Div. 598, 127 N. Y. Supp. 382.

[7, 8] We are not here concerned whether or not Montgomery committed any criminal act in the state of Pennsylvania or whether he was in fact a coconspirator. These are questions which can only be determined upon the trial. Munsey v. Clough, 196 U. S. 364, 25 Sup. Ct. 282, 49 L. Ed. 515; In re Strauss, 197 U. S. 324, 25 Sup. Ct. 535, 49 L. Ed. 774. Whether Montgomery is innocent or guilty must be heard in the court where he is charged with the crime. He is now demanded by Pennsylvania under an indictment filed in one of its counties which sufficiently charges him with a crime. The courts have repeatedly stated that the warrant of the Governor establishes a prima facie case that the arrest and direction for surrender are lawful and valid. The burden is upon the prisoner to show that he is not in fact a fugitive from justice, and that burden requires evidence which is practically conclusive. Hyatt v. Corkran, 188 U. S. 691, 23 Sup. Ct. 456, 47 L. Ed. 657; McNichols v. Pease, 207 U. S. 100, 28 Sup. Ct. 58, 52 L. Ed. 121.

Therefore, in view of Montgomery's own admissions upon the hearing, of his presence in the demanding state, with opportunity for and actual conference with a coconspirator during the period in which it is charged in the indictment the crime was committed, I am obliged to hold that he is a fugitive from justice within the meaning of the

law, and that he should be delivered up in accordance with the demand of the rendition warrant.

If counsel representing the relator feel aggrieved by these conclusions, they may have a stay pending such proceedings as they may be advised are necessary to take the case to the Supreme Court.