Ex parte Bert Ellis and Ralph Langston in Habeas Corpus.*

Springfield Court of Appeals. September 17, 1928.

*Corpus Juris-Cyc References: Courts, 15CJ, section 318, p. 933, n. 87; Extradition, 25CJ, section 5, p. 255, n. 18; section 12, p. 257, n. 58; p. 258, n. 63; section 25, p. 262, n. 48; section 27, p. 264, n. 72; section 30, p. 266, n. 88; Habeas Corpus, 29CJ, section 58, p. 70, n. 36; section 63, p. 76, n. 97; p. 77, n. 99; p. 78, n. 11; section 66, p. 80, n. 37; section 189, p. 165, n. 39; section 191, p. 167, n. 72.

*Page, Barrett & Barrett* for petitioners.

*R. S. Wilson* and *Dan M. Nee* for respondents.

BRADLEY, J.—Bert Ellis and Ralph Langston, in separate petitions, seek relief under the *Habeas Corpus* Act. The petitions in substance are indentical. The Ellis petition or case is numbered 4429 .and the Langston case is numbered 4430. Both cases were heard as one and are so briefed, and are so interrelated that a separate consideration is not necessary, hence we shall consider them together.

Petitioners allege that they are unlawfully deprived of their liberty by S. H. Kincannon, messenger, appointed by the Governor of Arkansas, and Alfred Owen, Sheriff of Greene county, Missouri. Petitions were filed November 7, 1927, and writs issued on same day directed to respondents. Writs were obeyed and in due course respondents filed returns. No traverse seems to have made to the returns, but no point is made in this respect and the causes were heard as though the facts alleged in the petitions and returns were in issue. In such situation we may proceed although no traverse or answer was made to the returns. [Ex parte Flournoy, 310 Mo. 355, 275 S. W. 923.]

Hon. O. E. Gorman, a member of the Greene County Bar, was appointed as commissioner to hear the evidence and to make report of his findings. The causes were heard and argued before the commissioner, and thereafter on April 23, 1928, he filed his report recommending that the writs be quashed and the prisoners remanded. April 28th, leave was granted to take further evidence. The causes were not referred back to the commissioner, but depositions were taken on behalf of the petitioners and said depositions were filed, and the causes were argued and submitted on May 14th.

Respondents in the returns allege in effect that petitioners, on August 9, 1927, were jointly indicted, in two separate indictments, by the grand jury of Logan county Arkansas, for obtaining under false pretenses, in November and December, 1926, from the American Bank & Trust Company, of Paris in said county, the sum of $6100; that a warrant was issued upon said indictments for the arrest of petitioners; that the Governor of Arkansas made requisition upon the Governor of Missouri for the apprehension of petitioners; that a hearing was had before the Governor of Missouri on the requisition and that the Governor honored said requisition and issued his rendition warrant for the apprehension of petitioners; that acting under the warrant of the Governor respondent Owens arrested petitioners in Greene county, Missouri, and delivered them to respondent Kincannon who is authorized in the requisition papers to receive petitioners and convey them to Logan county, Arkansas.

The chief contention of petitioners is that they are not fugitives from justice. If they are not fugitives from justice as that phrase means in the law of requisition then they should be discharged notwithstanding the fact that the Governor of this State honored the requisition. The Governor's rendition warrant makes it prima facie that petitioners are fugitives from justice, but this prima-facie case may be overcome in *habeas corpus*, but the burden of over coming the prima-facie case is upon petitioners. [Ex parte Flournoy, supra.]

The indictments which are the foundation of the requisition were returned by the grand jury of Logan county, Arkansas, on August 9, 1927. One indictment charges that on November 18, 1926, petitioners by false pretenses, which are set out, obtained from the American Bank & Trust Company the sum of $2500. The other indictment charges that on December 21, 1927, petitioners by false pretenses, which are set out, obtained from the American Bank & Trust Company the sum of $3600. The last-mentioned indictment charges the offense to have been committed four months and twelve days after the indictment was returned. Also this indictment was not signed by the prosecuting attorney. Petitioners contend that this indictment charges no offense under the laws of Arkansas and is not sufficient to support requisition. Our learned commissioner, in his finding, sustained the contention of petitioners as to the indictment charging the obtaining of $3600. We will dispose of this feature later in this opinion, and will here proceed without regard to the alleged defects of the indictment, assuming that the date, 1927, in the indictment is a clerical error, and that 1926 was intended.

To sustain their contention that they are not fugitives from justice, petitioners introduced evidence to show that neither of them was in the State of Arkansas on November 18th and December 21, 1926. Without going into detail we think it sufficient to say that the record before us shows conclusively that neither of the petitioners was in the State of Arkansas on November 18th and December 21, 1926. In 1926 petitioners as partners had a contract with the city of Paris in Logan county, Arkansas, to install a water system. They commenced the installation of the water system in April, 1926, and from that time and up to and including December 21, 1926, petitioners obtained from the American Bank & Trust Company about $15,000 on numerous notes given from time to time by the partnership. The notes for the most part were signed by petitioners' foreman at Paris, but written authority was given for such signing. Also the notes for the most part were signed in the name of petitioner Langston by the foreman, but they were considered as the notes of the partnership. The account which petitioners carried in said bank and trust company was also in the name of petitioner Langston.

According to the evidence of the cashier of the bank and trust company both petitioners at various times during the progress of the

work in which they were engaged made the representations upon which the loans were made and that these representations were made in the city of Paris in said Logan county. It is conceded that petitioner Ellis had charge of the contract in Paris and was there a good portion of the time from April to December, 1926. Petitioner Langston in his evidence states that he was in Paris "two weeks the first part of April," 1926, "when we started the job." Also petitioner Langston testified that petitioner Ellis was in Paris "pretty well prior" to November, 1926.

In matters of requisition State courts are bound by the construction of the law of requisition by the United States Supreme Court, [Dennison v. Christian, 101 N. W. (Nebr.) 1045, 117 Am. St. Rep. 817, 196 U. S. 637, 49 L. Ed. 630.]

To constitute one a fugitive from justice from a given State it is essential that the person having been within the demanding State shall have left it and be within the jurisdiction of the State from which his return is demanded and that the person shall have incurred guilt before he left the demanding State and while bodily therein. [25 C. J. 257; Ex parte Montgomery, 244 Fed. 967; State v. Wellman, 170 Pac. (Kan.) 1052, L. R. A. 1918D 949; People v. Hyatt, 64 N. E. (N. Y.) 825, 188 U. S. 691, 47 L. Ed. 657.] It is not necessary, however, that the alleged fugitive shall have committed within the demanding State every act necessary to complete the alleged crime, but, if in the case of a crime consisting of several acts or parts, the accused commits within the demanding State any one of such acts and departs from the State before the happening of other acts authorized or contemplated by him, he is, within the meaning of the law, a fugitive from justice. [25 C. J. 258; Strassheim v. Dailey, 221 U. S. 280, 55 L. Ed. 735; Ex parte Montgomery, supra; Ex parte Graham, 216 Fed. 813; In re Cook, 146 U. S. 983, 36 L. Ed. 934; In re Sultan, 20 S. E. (N. C.) 375, 28 L. R. A. 294.]

The most that can be said from the evidence in the record before us on the question of the actual presence of the petitioners in the demanding State during the period the alleged false pretenses were made, is that such evidence is conflicting. In such case petitioners cannot be discharged in *habeas corpus* on the ground that they are not fugitives from justice. [State ex rel. v. Westhues (Mo. Sup.), 2 S. W. (2d) 612; Munsey v. Clough, 196 U. S. 364, 49 L. Ed. 515.]

The offenses alleged, as stated, are obtaining money under false pretenses. These offenses consisted of the acts of making the alleged false pretenses and representations and the final act was obtaining the money. Making the alleged false representations and pretenses in order to obtain the loans were certainly overt acts in the commission of the alleged crimes which were fully consummated when the money was obtained. Under the law as we find it we must hold that petitioners are fugitives from justice.

As stated, supra, our commissioner held that the indictment not signed by the prosecuting attorney and alleging an impossible date charged no offense under the laws of Arkansas. Since the commissioner filed his report petitioners and respondents have filed here a stipulation as to the laws of Arkansas concerning matters pertinent. From the statutes and the decisions of the Arkansas Supreme Court set out and referred to in the stipulation, it appears that the indictment was not invalidated because it charged an impossible date and was not signed by the prosecuting attorney. [See Crawford & Moses' Arkansas Digest, 1921, secs. 3012, 3014 and 3019; Conrad v. State, 65 Ark. 559, 47 S. W. 628; Carothers v. State, 75 Ark. 574, 88 S. W. 585; Anderson v. State, 5 Ark. 444.] Also the stipulation contained the statute defining the offenses with which defendants are charged. [Sec. 2449, Crawford & Moses' Digest 1921.] There is no controversy as to the Arkansas Statutes and decisions cited, hence it is not necessary to consider them further. We should state, however, that these statutes and decisions were not before our learned commissioner when he made up his finding and report wherein he held that the indictment, alleging an impossible date and not signed by the prosecuting attorney, charged no offense under the laws of Arkansas.

Petitioners contend that the real motive underlying the prosecution is the collection of a debt. In *habeas corpus* to obtain release from arrest under a rendition warrant the motive underlying the institution of the prosecution in the demanding State cannot be considered by the court. [State ex rel. v. Westhues (Mo. Sup.), 2 S. W. (2d) 612, l. c. 616, cited supra.] This case holds, however, that such motive is a proper matter for consideration by the Governor of the asylum State.

Petitioners make the further contention, if we correctly understand, that the authenticating certificate or what we may call the requisition proper, of the Governor of Arkansas upon the Governor of Missouri was not *attached* to the papers which it purported to authenticate, and that therefore such papers, which include the indictments, were not properly authenticated. Respondents introduced before the commissioner certain papers certified by our Secretary of State as being before the Governor when the hearing was there had and when the requisition was honored. The Secretary of State in this certificate certified that "the annexed papers contain a full, true and complete copy of requisition on the Governor of Missouri for the return of Ralph W. Langston and Bert Ellis to Arkansas to answer to a charge of false pretenses committed in Logan county, Arkansas." The "papers" actually annexed to the certificate of the Secretary of State, as being before the Governor, are: (1) Copy of the petition or application of the prosecuting attorney to the Governor of Arkansas for the requisition; (2) copies of the indict

ments; (3) copies of the warrants issued in Arkansas for the arrest of the petitioners; and (4) copy of appointment by Governor of Arkansas of S. H. Kincannon as agent to convey petitioners to Arkansas if and when the requisition was honored. There was not among the ''annexed papers'' above referred to the certificate of the Governor of Arkansas that the ''annexed papers'' were authentic. Our commissioner, however, found from the evidence that the authenticating certificate of the Governor of Arkansas was in fact before the Governor of Missouri when the hearing was had and when the requisition was honored. Our commissioner further found that counsel representing the State of Arkansas before the Governor of Missouri at the requisition hearing inadvertently got the authenticating certificate among his files and did not leave it with the Governor to be transmitted and filed with the other papers with the Secretary of State. Also the original authenticating certificate was introduced in evidence.

Since the hearing before our commissioner we granted leave to respondents to make further proof that the authenticating certificate was in fact before the Governor of Missouri. Pursuant to this leave, respondents caused to be returned to the Governor of Missouri the original authenticating certificate of the Governor of Arkansas and procured the affidavit of the Secretary to the Governor that the authenticating certificate was in fact before the Governor when the requisition was honored and when the rendition warrant was issued. The Governor transmitted this affidavit together with the original authenticating certificate to the Secretary of State to be filed with the other papers in the requisition matter. The Secretary of State, in what we may term a supplemental certificate, furnished respondents a certified copy of the affidavit and authenticating certificate and these certified copies were filed here.

When the two certificates of our Secretary of State are considered, together with the evidence before our commissioner, we think that the record conclusively shows that the authenticating certificate was before the Governor when the hearing was had and when the requisition was honored and the rendition warrant issued. Also a presumption of right action obtains. Under section 5278, Revised Statutes of the United States, 18 U. S. C. A., section 662, before a Governor of one State is authorized to honor a requisition made on him by the Governor of another state for the delivery of a fugitive from justice four facts must be made to appear: (1) That the person demanded is demanded as a fugitive from justice; (2) that the demanding executive has produced a copy of an indictment found or affidavit made before a magistrate charging the person demanded with having committed a crime; (3) that such copy has been authenticated by the certificate of the Governor of the demanding State; and (4) that the person demanded is a fugitive from justice. All

132

these facts are jurisdictional and requisition will not be honored by the Governor of the asylum State until such facts appear. [State ex rel. v. Westhues, supra.] The Governor of this State honored the requisition and, absent evidence to the contrary, the presumption goes that he acted rightly. His action could not have been right if the authenticating certificate was not before him, because without this certificate the copy of the indictments were not authenticated, and without such authentication jurisdiction was lacking. If the authenticating certificate was before the Governor then every jurisdictional fact appeared. Not only is there no evidence that such certificate was not before the Governor, but, as stated, the evidence is conclusive that it was.

We recognize that the rule obtains that requisition requirements must be strictly followed, but we are not willing to hold that the mere fact that the authenticating certificate of the demanding Governor was not inseparably attached to the papers it authenticated, is a failure to strictly comply with the law. We have given these causes careful and painstaking consideration and under the law, by which we are bound, we cannot discharge the petitioners. Discharge should be denied and the petitioners should be remanded to the custody of the authorized agent of the demanding State. It is so ordered. *Cox, P. J.*, and *Bailey, J.*, concur.