HERMAN SCHEIN, Petitioner, v. R. E. GALLIVAN.—10 S. W. (2d) 521.

Court en Banc, October 27, 1928.

*Henry P. Lay* for petitioner.

WALKER, J.—The petitioner avers that he is wrongfully detained by R. E. Gallivan, a special messenger of the State of Kansas, and invokes our writ of habeas corpus to inquire into the legality of his detention.

The Governor of the State of Kansas, pursuant to the Federal Constitution and statutes and in conformity with our laws in regard thereto, applied to the Governor of this State for the extradition of the petitioner. After a hearing the application was granted and an order was made that the petitioner be delivered into the custody of the special messenger of the State of Kansas, to be taken by him to that state for trial. The petitioner thereupon filed his petition in this court, praying for the issuance of our writ of habeas corpus to the end that he may be discharged. Among other reasons, not deemed controlling, he urges that he is not a fugitive from justice and hence that the executive order under which he is held is unauthorized.

The issues upon which the application herein was made by the petitioner and heard by this court were limited to the return of the special messenger of the demanding state and the denial of same by the petitioner. [Knight v. Miles, 308 Mo. 538, 272 S. W. 922.] A reply to the denial was filed by the messenger, which is the same in effect as his return, but is more specific, and expressly admits that the petitioner was not in the State of Kansas at the time of the alleged commission of the crime with which he is charged. This reply may properly be construed as supplementing or rendering more definite the return.

In the determination of the question as to whether the petitioner is a fugitive from justice the introduction of defensive facts in regard to the commission of the crime is not admissible, but evidence is admissible as to the nature of the offense and the circumstances under which he left the demanding state as determinative of the matter at issue. [Ex parte Flournoy, 310 Mo. 355, 365, 275 S. W. 923, 926; Ex parte Mohr, 73 Ala. 503, 49 Am. Rep. 63, 18 Cent. Law J. 252; Ex parte Reggel, 114 U. S. 642, 29 L. Ed. 250.]

The offense with which the petitioner is charged is alleged to have been committed on the first day of February, 1928. This record furnishes an uncontradicted denial by the petitioner of his presence in the demanding state at the time it is alleged the offense was committed. If it be granted, as it well may be, that this alone is not sufficient to authorize his discharge (Ex parte Hatfield (Tex. Cr.), 235 S. W. 591), we find in the return to our writ an admission of the truth of this denial couched in an affirmative statement that the petitioner "was not in the State of Kansas at the time it is alleged that he committed the offense charged." The offense, however, is a continuing one, within the limits of the statute defining it, and its commission is based upon a neglect of duty rather than an overt act. This being true, although he may not have been in the demanding state at the precise time of the commission as alleged in the affidavit, if it is shown that he was there, near or about the time the judgment was rendered, and left the state and failed to perform the duty imposed upon him, then the executive order authorizing his extradition should not be disturbed and he should be remanded to the custody of the officer charged with his extradition. This conclusion finds its support in the rule which obtains in the construction of criminal statutes, that where a continuing offense consists of a neglect of duty, the criminal intent of the offender may be presumed to exist so long as his negligence continues within the terms of the statute above stated. [People ex rel. v. Gottschalk, 237 N. Y. 483, 32 A. L. R. 1164.]

A resume of the record may enable it to be determined whether this rule is applicable in the instant case. The wife of the petitioner obtained a divorce from him in the State of Kansas in February, 1918. In this decree all of the personal property of the petitioner was awarded to her as permanent alimony and she was given the guardianship, custody, control and education of the minor children, and an injunction was placed upon the petitioner not to interfere with her ownership of the property or her custody, control, etc., of the children. In January, 1923, the former wife filed a motion in the trial court for alimony for the support and education of the minor children, the petitioner being represented by counsel, and the court ordered that the petitioner pay to his former wife seven dollars and fifty cents per week as permanent alimony for the support and educa-

tion of the minor children and that the same be paid weekly until the further order of the court. In April, 1923, on an application of the former wife for an order on the petitioner for the payment of alimony for the support of the minor children, the petitioner being present, he was ordered to indorse to the sheriff certain traveler's checks in the sum of $400, belonging to him, then in the possession of the sheriff, to enable the latter to cash the same, and upon the petitioner's refusal so to do the sheriff was empowered to cash them and pay the proceeds to the wife for the support of the minor children. In November, 1927, the former wife and the petitioner appeared in the trial court and by mutual agreement and a stipulation of the parties, a modification was made by the court "relative to the alimony hereinbefore ordered to be paid with the traveler's checks, then amounting to three hundred and seventy dollars, which checks had theretofore been ordered cashed and the money turned over to the plaintiff" (the former wife). The court made the modified order and the checks were cashed and turned over to the plaintiff in the payment of alimony for the support of the children. It appears from the denial of the petitioner, the truth of which is not questioned nor referred to in the return, that the petitioner then returned to this State, where he had for several years theretofore been living and has since continuously resided, and has not been in the State of Kansas. While evidence as to the guilt or innocence of the petitioner is not admissible in a proceeding of this character, facts disclosed by the pleadings and the record may be shown as tending to prove that he was not a fugitive from justice. The record shows that up to the date of his return to Missouri the alimony was settled and adjusted by the stipulation and agreement of the parties and this settlement was confirmed by the order and judgment of the court. Notwithstanding the continuing nature of petitioner's civil liability, its criminal character cannot be said to apply when he left the demanding state immediately after the settlement, because he was then charged with no duty requiring performance at that time, upon which a presumption of guilty intent can be based, sufficient to classify him as a fugitive from justice. An intent to violate a criminal statute, except in certain cases of the delinquency of public officials (State v. Noland, 111 Mo. 473, 496, 19 S. W. 715), is a necessary ingredient to the commission of a crime. The non-existence therefore of a criminal liability on the part of the petitioner at the time he left Kansas, following the settlement of the alimony then due, leaves no ground for the presumption that he left with criminal intent. In the absence of such intent he cannot be held to be a fugitive from justice. It may be admitted that the absence of the petitioner's guilt is, as a general rule, a matter exclusively within the province of the demanding state, but where, as at bar, all the evidence, whether disclosed by the affidavit, the admissions of the return

or the exhibits, consisting of court records, filed therewith, shows conclusively that the crime charged could not have been committed, the petitioner cannot be held to be a fugitive from justice and hence is entitled to be discharged. [Ex parte Le Vere, 39 Nev. 214, 216, 156 Pac. 446; In re Kuhns, 36 Nev. 487, 50 L. R. A. (N. S.) 507.]

It has been held in numerous cases somewhat similar in their general features to the case at bar, that where a man furnishes support for the members of his family while in the state where they are, but later removes to another state and then fails to continue the support, he is not, with respect to the offense of non-support, a fugitive from justice of the state where the deserted wife or children remain. In the case of In re Kuhns, supra, the Governor of Pennsylvania made a requisition upon the Governor of Nevada for the extradition of Kuhns, charged with a failure to furnish means for the support of his wife and minor child. The Governor of Nevada issued a warrant for his extradition. Habeas corpus was sued out to secure the petitioner's release. The evidence showed that he had made payments for such support from time to time, his last payment being a month in advance of the amount due. Before another payment became due he left the place of his domicile in Pennsylvania and went to Nevada, where he was residing when arrested under the warrant for his extradition. The court held upon a hearing of the habeas corpus for his release that, under the evidence, no failure of support was shown to exist at the time he left Pennsylvania and he was ordered discharged.

In re Roberson, 38 Nev. 326, L. R. A. 1915E, extradition was sought by the Governor of North Carolina of the Governor of Nevada of one who had been indicted in the former state for a failure to support his wife and children. The court held that the evidence showed that he had left the state under a mutual agreement of separation with his wife and that if he had such an intention it was formed after he left the State of North Carolina and he was not a fugitive from justice.

In Hyatt v. Corkran, 188 U. S. 691, 47 L. Ed. 637, wherein the Supreme Court of the United States, in reviewing the case of People ex rel. Corkran v. Hyatt, 172 N. Y. 176, 60 L. R. A. 724, in which the action of the New York court discharging the accused on the ground that he was not a fugitive from justice, said:

"The language of Section 5278, U. S. Revised Statutes provides, as we think, that the act shall have been committed by an individual who was at the time of its commission personally present within the State which demands his surrender. It speaks of a demand by the executive authority of a State for the surrender of a person as a fugitive from justice, by the executive authority of a State to which such person has fled, and it provides that a copy of the indictment found, or affidavit made before a magistrate of any State, charging the per-

son demanded with having committed treason, etc., certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, shall be produced, and it makes it the duty of the executive authority of the State to which such person has fled to cause him to be arrested and secured. Thus the person who is sought must be one that has fled from the demanding State, and he must have fled (not necessarily directly) to the State where he is found. It is difficult to see how a person can be said to have fled from the State in which he is charged to have committed some act amounting to a crime against that State, when in fact he was not within the State at the time the act is said to have been committed. How can a person flee from a place that he was not in? He could avoid a place there he had not been in; he could omit to go to it; but how can it be said with accuracy that he has fled from a place in which he had not been present? This is neither a narrow nor, as we think, an incorrect interpretation of the statute. It has been in existence since 1793, and we have found no case decided by this court wherein it has been held that the statute covered a case where the party was not in the State at the time when the act is alleged to have been committed. We think the plain meaning of the act requires such presence, and that it was not intended to include, as a fugitive from the justice of a State, one who has not been in the State at the time, if ever, the offense was committed, and who had not, therefore in fact, fled therefrom. . . . He must have been there when the crime was committed, as alleged, and if not, a subsequent going there and coming away is not a flight.''

Cases which hold that the reason of one's leaving a state will not be considered in determining whether he should be extradited, will be found to be limited to those in which no question arose as to the presence in the demanding state of the accused at the time of the commission of the alleged offense. The following afford illustrations of the correctness of this fact: Drew v. Thaw, 235 U. S. 432; Appleyard v. Mass., 203 U. S. 222, 7 Ann. Cas. 1073; Notes to State v. Hall (N. C.), 28 L. R. A. 289.

Where, however, as in the instant case, it has not only been shown that the petitioner was not in the demanding state at the time of the alleged commission of the offense with which he is charged, but that when he left that state he was subject to no criminal liability, the conditions under which he left become not only material but essential in the determination of the question as to whether or not he is a fugitive from justice.

The conduct of the petitioner lends probative force to the conclusion that he cannot in reason and under the rulings of the courts be held to be a fugitive from justice. Thus concluding, we hold that he is entitled to be discharged. It is so ordered. *Atwood, Gentry* and

*Ragland, JJ.*, concur; *White, C. J.*, dissents in separate opinion, in which *Gantt* and *Blair, JJ.*, concur.

WHITE, C. J., (dissenting).—The majority opinion correctly sets forth the principles of law governing this case, as I understand them, but I do not agree with that opinion as to the admitted facts.

This case is peculiar in that the facts constituting the crime are the exact facts which would show the petitioner a fugitive from justice. Therefore, while we cannot inquire into the guilt or innocence of the petitioner, necessarily, in investigating the facts affecting his status as a fugitive, we find those same facts would constitute the crime of which he stands charged. The petitioner may be entirely innocent of the charge, but that is for the determination of the courts of Kansas.

The motion for judgment on the pleadings in this case admits every fact alleged by the petitioner, which is well pleaded. Some facts set out in the various pleadings admitted in the argument are relevant only as explaining the surroundings. The matter of the travelers' checks and the settlement in relation of them in November, 1927, only show that there was a controversy and a settlement of amounts claimed to be due to his former wife by the petitioner for the previous support of the children; amounts due up to that date. Even if the former wife had the desire to excuse the petitioner from further claim she might have for support of the children, it would not affect his responsibility for their support. For that he cannot be excused. It is a duty which he must at all events discharge.

Likewise, the fact that he was not in Kansas at the date the crime is charged to have been committed is not conclusive. As 'stated in the majority opinion, this was a continuing offense, and when the act charged was once conceived in the mind of the petitioner, any act in furtherance of it, or in continuation of the purpose thus formed after he left the State, would be in execution of the offense.

The reply of the petitioner filed before the motion for judgment on the pleadings contains this allegation:

"Fifth: R. E. Gallivan further says that the said Herman Schein was not in the State of Kansas 'on or about the 1st day of February, A. D. 1928,' the time the affidavit and complaint charges the offense to have been committed, but further says that prior to the first day of February, 1928, while in said State of Kansas, the said Herman Schein departed from same with the intent to abandon his children and completed the abandonment on or about the time charged in the affidavit and complaint."

This is a statement of a fact which the motion concedes to be true, that the petitioner, while in the State of Kansas, departed from the same with intent to abandon his children, and completed his abandonment on or about the time charged in the affidavit and complaint. If

he did those acts in the commission of the crime they were the acts which constituted the man a fugitive from justice.

The allegation, ''with the intent to abandon his children,'' is an allegation of fact properly pleaded. [31 Cyc. 57; State v. Lyle, 296 Mo. 427; State v. Welch, 311 Mo. 486.]

Therefore I dissent. *Blair* and *Gantt, JJ.,* concur in these views.