H. D. KEETON, for and on behalf of HERBERT TOMASSONE, Petitioner, v. ERNEST GAISER, Messenger and Agent from the State of New York.—55 S. W. (2d) 302.

Court en Banc, November 3, 1932.

500

*Stratton Shartel,* Attorney-General, *Ray Weightman,* Assistant Attorney-General, and *James E. McLaughlin* for respondent; *Alexander G. Blue* of counsel.

ELLISON, J.—*Habeas corpus.* The respondents, George W. Strodtman, Sheriff of the City of St. Louis, and Ernest Gaiser, messenger and agent of the State of New York, hold in custody one Herbert Tomassone (whom we shall call the petitioner, though application for our writ was made by another person as Sec. 1427, R. S. 1929, permits), on a rendition warrant issued by the Governor of this State in response to a requisition of the Governor of New York. The requisition shows the petitioner to be under indictment in the demanding state on a charge of child abandonment, and that he is a fugitive from justice.

No complaint is made as to the form of the papers. The petitioner's reply to the respondent's return denies he is a fugitive from justice. It is alleged the New York indictment charges him with a violation of Section 480 of the Criminal Code of New York in that he abandoned his child in that state on December 18, 1928; and as against the charge so laid it is averred he left New York on December 22, 1928, coming to Missouri where he has been ever since, and that at the time of his departure he had fully satisfied all his obligations for the support of his family and owed nothing therefor.

At the hearing before this court the petitioner testified that on coming to St. Louis County four years ago he became a citizen of this State; that while living in New York his wife left him and went to live with her parents in August, 1918; that in obedience to some order of a New York court he began paying his wife $7.50 per week for the support of their minor child; that his wife's uncle assaulted him and threatened to poison him in consequence of which he consulted a lawyer and was advised to pay up all installments of support money due to the time of his departure and to leave the state. He testified he did this and came to Missouri with no intention of abandoning his child but simply to escape personal injury, and that he had since been

502

unable to earn enough money to support the child. No oral evidence was presented by the respondents.

The petitioner contends the fact is established that he is not a fugitive from justice, because: (1) his evidence, which he says is undisputed, shows he has committed no crime, in consequence of which there was nothing to flee from; (2) if a crime was committed the essence thereof was his failure to support the child, which did not occur until after he had left the State of New York. We are of the opinion the petitioner has failed to make out a case entitling him to discharge, for reasons to be stated.

■ The extradition of fugitives from justice as between the several states is governed by the Constitution and statutes of the United States, and Federal decisions are controlling. Section 2 of Article IV of the United States Constitution provides "a person charged in any State with treason, felony or other crime" shall, on demand of the executive authority thereof, be delivered up by any other state to which he has fled. Section 5278, Revised Statutes, United States (18 U. S. C. A. sec. 662), makes it the duty of the executive authority of the asylum state to cause the fugitive to be arrested and held for extradition on demand of the executive authority of the requisitioning state and production of a copy of an indictment found or affidavit filed before a magistrate therein, charging him with treason, felony, or other crime, certified as the statute requires. Our own statutes, Sections 1458 and 3591, Revised Statutes 1929, conform to these Federal requirements as needs they must.

■ Certain general propositions are well established. First, as is apparent from the constitutional and statutory provisions just referred to, the bases for extradition are the facts that the accused has been formally *charged* with a crime in the demanding state and that he has fled therefrom. Whether there has been a sufficient charge of the crime is a question of law; whether the accused is a fugitive from justice is a question of fact. [Hogan v. O'Neill, 255 U. S. 52, 56, 41 Sup. Ct. 222, 223, 65 L. Ed. 497, 500; Appleyard v. Massachusetts, 203 U. S. 222, 228, 27 Sup. Ct. 122, 124, 51 L. Ed. 161, 163, 7 Ann. Cas. 1073; Hyatt v. Corkran, 188 U. S. 691, 709-10, 23 Sup. Ct. 456, 458, 47 L. Ed. 657, 660.]

■ The question of the guilt or innocence of the accused is not one to be determined in the asylum state—certainly not in a *habeas corpus* proceeding to review the action of the executive authority in ordering interstate rendition. Aside from the plain implications of the law to that effect, it is obvious that any other course would defeat its purpose and be cumbersome and impractical. The point has been so ruled many times by the Federal and State courts. 20 C. J. sec. 67, p. 81; 12 R. C. L. sec. 65, p. 1247; Drew v. Thaw, 235 U. S. 432,

439, 35 Sup. Ct. 137, 138, 59 L. Ed. 302, 307; State ex rel. Gaines v. Westhues, 318 Mo. 928, 933, 2 S. W. (2d) 612, 615.]

To establish that the accused is a fugitive from justice in the sense contemplated by the Federal Constitution and statute it need appear only that he was in the demanding state when the alleged crime was committed and that he subsequently departed therefrom. His motive or purpose in leaving is immaterial. [Hogan v. O'Neill, 255 U. S. 1. c. 56, 41 Sup. Ct. 1. c. 223, 65 L. Ed. 1. c. 500; Appleyard v. Massachusetts, 203 U. S. 1. c. 229, 27 Sup. Ct. 124, 51 L. Ed. 1. c. 163, 7 Ann. Cas. 1073.]

A number of cases, including the two just cited, say the accused becomes a fugitive if he leaves the demanding jurisdiction after having *committed* the criminal act there, and this has sometimes (as perhaps in the instant case) led to an erroneous conclusion that the accused may make an issue on the question of his guilt or innocence. But, as just stated, such is not the law. [People ex rel. Gottschalk v. Brown, 237 N. Y. 483, 487, 143 N. E. 653, 654, 32 A. L. R. 1164.] For the purpose of extradition the formal charge of the crime is the evidence of its commission, and the question of fact to be determined is whether the accused was in the demanding state at that time.

As to the time of the commission of the crime. Hyatt v. Corkran, supra, 188 U. S. 1. c. 711, 23 Sup. Ct. 1. c. 458, 47 L. Ed. 1. c. 660, holds the date alleged in the indictment is controlling where the proof offered in support of the requisition fixes no other date. In Ex parte Montgomery, 244 Fed. 967, 970, affirmed memorandum, 246 U. S. 656, 38 Sup. Ct. 424, 62 L. Ed. 924, it is said the demanding state is not bound either upon the trial or in extradition proceedings by the specific date laid; and Strassheim v. Daily, 221 U. S. 280, 286, 31 Sup. Ct. 558, 560, 55 L. Ed. 735, 738, declares "when . . . it appears that the prisoner was in the State in the neighborhood of the time alleged it is enough." [See, also, Ex parte Ellis, 223 Mo. App. 125, 130, 9 S. W. (2d) 544, 547.]

Applying the foregoing general principles to this case, and particularly the rule announced in the decisions just cited, the fact is established by the petitioner's own confession that he is a fugitive from justice within the meaning of the law: for the indictment charges the crime was committed on December 18, 1928, the State made no effort by proof to assign a different date, and the accused admitted he was in New York on the date so alleged and for four days thereafter. His purpose in leaving the jurisdiction and the fact of his guilt or innocence, are, under the controlling decisions referred to, immaterial.

But we shall not confine our holding to that ground. The petitioner makes certain further contentions founded on some expressions in Schein v. Gallivan, 321 Mo. 268, 10 S. W. (2d) 521,

and the respondents in their brief meet these contentions on their merits. So we shall consider them. The petitioner refers us to the allegations in his reply and to his testimony that he paid all installments of money due for the support of his child up to the time of his departure from New York and that he left without any intention of abandoning the child. He argues from this that the abandonment, if any, was not committed until he ceased to support the child after he had come to Missouri; and that in this view of the case New York was not the actual *situs* of the crime in such sense as to make him subject to extradition. The respondents contend, contra, that when the accused ceased to support the child his act of omission operated retrospectively and fixed the date of the crime as at the time of the physical abandonment, which was about the date alleged in the indictment; and that in any event the abandonment was thereby completed, and that they (respondents) are not bound by the date specified in the indictment.

In the Schein-Gallivan case, supra, on which the petitioner relies, the accused was charged by affidavit in Kansas with child desertion. He and his wife had been divorced in that state. She obtained a decree requiring him to pay her $400 for the support of their minor children. In November, 1927, by stipulation of the parties the decree was modified and the accused paid the lesser amount agreed upon. He made a trip to Kansas to be present at the last mentioned court proceeding but both before and after the date thereof was a resident of Missouri, and he returned to this State immediately. The criminal charge filed against him nearly a year later fixed the date of his offense as February 1, 1928, some four months subsequent to the settlement. The Governor of Kansas having made requisition on the Governor of Missouri for the return of the accused, and the requisition having been honored, *habeas corpus* proceedings were instituted in this court in his behalf, the contention being he was not in Kansas when the alleged crime was committed. The facts concerning the compromise were shown by the records of the Kansas court and were not disputed; and the respondent messenger in his written reply to the petitioner's denial of the return to our writ, admitted the accused "was not in the State of Kansas at the time it is alleged that he committed the offense charged."

On these facts this court discharged the prisoner from custody, holding it to have been conclusively established by the evidence, and the respondent's admission that "the crime charged could not have been committed," and that the accused consequently was not a fugitive from justice. The opinion declares that while "the introduction of defensive facts in regard to the commission of the crime is not admissible," yet on the question whether the accused is a fugitive from justice "evidence is admissible as to the nature of the offense and the circumstances under which he left the demanding state." It

is further stated ''cases which hold that the reason of one's leaving a state will not be considered in determining whether he should be extradited, will be found to be limited to those in which no question arose as to the presence in the demanding state of the accused at the time of the commission of the alleged offense.''

Three of the judges joined in a dissenting opinion which agreed with the pronouncements of law contained in the principal opinion but disagreed with its conclusions of fact. The dissenting opinion points out that while, as the main opinion states, the respondent's reply in the court files did admit the accused was not in the demanding state of Kansas on the alleged date of the commission of the crime, yet it followed up this admission with the charge that the accused departed from Kansas with the intention of abandoning his children and carried that intention into effect at or about the time named in the affidavit and complaint. This was held to tender an issue of fact on which the documentary evidence and the testimony of the accused were insufficient to entitle him to discharge in a *habeas corpus* proceeding attacking the rendition warrant.

The statements of law contained in this Schein-Gallivan case must be interpreted in the light of its facts. When the evidence ''shows conclusively that the crime charged could not have been committed'' by the accused *because he was not in the demanding state at the time,* it is true he is entitled to a discharge. But it is not to be understood from the quoted words that the doors may be thrown open and any sort of evidence adduced which would tend to prove the accused could not have committed the crime—as, for illustration, *alibi* evidence that he was in some other part of the demanding state at the time, or that some other person was the offender. Such evidence would go only to the question of his guilt or innocence. Likewise, it is perhaps true, or at least we shall concede, ''the nature of the offense and the circumstances under which he left the demanding state'' may be considered when the crime is such that the intention of the accused in departing from the jurisdiction is a necessary element in fixing the date of the commission thereof. But, as has been stated earlier in this opinion, it is not true as a general proposition that the motive or purpose of the accused in leaving the demanding state is material.

The law on these points is discussed in two leading cases. It was held in Hyatt v. Corkran, supra, 188 U. S. 1. c. 712, 23 Sup. Ct. 1. c. 458, 47 L. Ed. 1. c. 660, that to be a fugitive from justice the accused must have been personally present in the demanding state when the alleged crime was committed. Constructive presence is insufficient. On the other hand it was ruled in Strassheim v. Daily, supra, 221 U. S. 1. c. 285, 31 Sup. Ct. 1. c. 560, 55 L. Ed. 1. c. 738, ''that the criminal need not do within the State every act necessary to complete the crime. If he does there an overt act which is and is intended to be a material

step toward accomplishing the crime, and then absents himself from the State and does the rest elsewhere, he becomes a fugitive from justice, when the crime is complete, if not before." Continuing, a few lines further on the opinion declares "his overt act becomes retrospectively guilty when the contemplated result ensues."

The doctrine of the Strassheim case applied to cases such as this results in this rule: that if a parent deserts his minor child and goes to another state intending to abandon it, and there completes the crime by withholding support, guilt attaches as of the date of the physical abandonment and he is extraditable. Conversely, if he leaves the child and departs from the jurisdiction without such intent, but thereafter forms and puts it into execution, he is guilty but not liable to extradition, provided he has not at any time reentered the jurisdiction. Such is the holding in Schein v. Gallivan, 321 Mo. 1. c. 272, 10 S. W. (2d) 1. c. 523, and the two cases there cited; and such is the necessary effect of the ruling in the recent case of Ex parte Heath, 87 Mont. 370, 287 Pac. 636.

The foregoing presents this curious situation. It is held in People v. Lewis, 132 App. Div. 256, 116 N. Y. Supp. 893, that the crime of child abandonment under the New York Penal Law, Section 480, on which is based the prosecution here involved, consists of two elements: (1) an abandonment of the child in destitute circumstances; (2) failure to provide. The case goes on to say the physical abandonment need not coincide in point of time with the failure to provide; and the holding is that where the desertion precedes the non-support the indictment should charge the offense as of the date of the latter, since no conviction can be had except for the crime as *completed*. So, under the New York law, as applied to this case, the actionable crime was not committed until after the accused came to Missouri, if it be true as he testified that his failure to provide did not occur until then; whereas, under the ruling of the United States Supreme Court in the Strassheim case, for the purpose of extradition the offense dates as of the time of the desertion if the accused left New York intending to abandon the child and thereafter withheld his support in this State.

■■ But this seeming conflict in the two rules does not stand in the way of granting of extradition. We must follow the Federal rule; and besides, the petitioner's contention is based wholly on his testimony that he did not fail to provide for the child before leaving New York, and that he departed without any such intention. Though *his* story is uncontradicted, we cannot accept it as conclusive. It would have to be practically that, or, as some of the cases say "clearly" sufficient to overcome the conclusion reached by the Governor, to entitle him to a discharge. [Schein v. Gallivan, supra, 321 Mo. 1. c. 270, 10 S. W. (2d) 1. c. 522; Ex parte Montgomery, supra, 244

Fed. l. c. 971, aff. memo., 246 U. S. 656, 38 Sup. Ct. 424, 62 L. Ed. 924; Hyatt v. Corkran, supra, 188 U. S. l. c. 714, 23 Sup. Ct. l. c. 459, 47 L. Ed. l. c. 660; Hogan v. O'Neill, supra, 255 U. S. l. c. 56, 41 Sup. Ct. l. c. 224, 65 L. Ed. l. c. 501; Innes v. Tobin, 240 U. S. 127, 131, 36 Sup. Ct. 290, 291, 60 L. Ed. 562, 564.]

Accordingly it is ordered and adjudged that the accused be remanded to the custody of the respondents. All concur.